[Richmond & Danville Railroad Co. v. Hammond.]

# Richmond & Danville Railroad Co. *v.* Hammond.

| 93 | 181 |
| 95 | 430 |
| 93 | 181 |
| 97 | 215 |
| 93 | 181 |
| 103 | 174 |

*Action for Damages by Administrator of Person Killed by Railroad Accident.*

1. *Negligence of foreman in charge of squad of laborers on hand-car, in failing to put out flags, or danger signals.*—The failure of the foreman in charge of a squad of laborers on a railroad to put out flags, or danger signals, as required by the known rules of the railroad company, to warn approaching trains of their presence on the track, is such negligence as renders the railroad company liable under the statute (Code, § 2590, subd. 2, 5), for personal injuries to one of the laborers, who, while returning in the evening to the station, on a hand-car with the others under the charge of the foreman, seeing an inevitable collision with a train approaching on a curve, attempted to leap from the car, but was run over and killed.

2. *Relevancy of evidence as to speed of car.*—The evidence showing that the hand-car on which the intestate was riding, at the time of its collision with an approaching train, was moving on a down grade very rapidly without the application of external force, it is permissible for the plaintiff to prove, as relevant to the question of negligence, the usual rate of speed at which such cars are run.

3. *Proof of foreman's authority; to what witness may testify.*—It being necessary for plaintiff to prove that, at the time of the collision which caused his intestate's injuries and death, the hand-car was under the control of the foreman of the squad of laborers, he may prove that the foreman exercised control and authority; and a witness may so testify as a fact.

4. *Evidence relevant to question of damages.*—As relevant to the question of the amount of damages the plaintiff is entitled to recover for the personal injuries which caused his intestate's death, he may prove the intestate's habits of industry and sobriety, his state of health, and his net income.

5. *Declarations of person injured as evidence.*—The declarations of plaintiff's intestate, made within five minutes after receiving the injuries which proved fatal, in reply to a question as to "how it happened," "that it was the carelessness of the foreman, he supposed, in not having out any flag-man, and that he himself did not know there was no flag-man out when he got on the hand-car," are not a part of the *res gestæ*, nor admissible as evidence on any other principle.

APPEAL from the Circuit Court of Fayette.

Tried before the Hon. S. H. SPROTT.

This action was brought by John W. Hammond, as the administrator of the estate of Zuela Shelton, to recover damages for the personal injuries which caused the death of his intestate, on the 25th May, 1889, while in the service of the defendant corporation; and was commenced on the 20th January, 1890.

The complaint contained seven counts, alleging in different form negligence on the part of the defendant and its servants. The only plea was the general issue. The jury returned a verdict for plaintiff, for $1,925, besides costs. The material facts disclosed by the evidence, as to the circumstances attending the accident, are stated in the opinion of the court. It was shown that the hand-car, on which the intestate with others was riding, was running on a down grade by its own force; and a witness for the plaintiff was allowed to testify, against the objection and exception of the defendant, that the usual speed of a hand-car was "from eight to twelve miles an hour." One Teasley, who lived near the place at which the accident occurred, and at once hastened to the spot, testified as follows : "Some one asked him [Shelton] how it happened. He said, it was the carelessness of Hackett, he supposed, in not having any flag-man out, and that he himself did not know there was no flag-man out when he got on the car." The court admitted this evidence, against the objection and exception of the defendant. The rulings on evidence, and the refusal of several charges asked, are assigned as error.

JAMES WEATHERLY, for appellant.

JOHN B. SANFORD, contra.

CLOPTON, J.—Zuela Shelton, plaintiff's intestate, while in the service of the Richmond & Danville Railroad Company, being one of a gang of laborers employed in repairing bridges and trestles, was injured under the following circumstances, as to which there is no dispute : On May 25, 1889, he and other laborers were engaged in repairing a trestle on defendant's road. By direction of Hackett, who was the foreman, having charge of the workmen and superintendence of the work, the laborers quit work about six o'clock in the afternoon, put their tools on a hand-car, then being used, and started to go to their camp to put off the tools, and then to Corona for rations. Hackett accompanied them on the car. When they had gone about a mile, a work train was discovered coming around a curve from the direction in which they were going. A collision being inevitable, Shelton, who was sitting on the front end of the hand-car between Hackett and one of the workmen, jumped off in front, and not clearing the track, was run over by the hand-car, and so seriously injured that he died in about three hours. No signal to notify passing trains of the presence of the hand-car on the track was displayed.

[Richmond & Danville Railroad Co. v. Hammond.]

The case shown by the evidence does not come within the provisions of subdivision 3 of section 2590 of the Code. While it is true that the deceased was bound to conform, and did conform to the orders and directions of Hackett, it does not appear that his having so conformed was the proximate cause, but the condition of his injuries. There was nothing improper in the order to take and leave the tools at the camp, and proceed to Corona for rations. The case rather comes within either subdivision 2—"when the injury is caused by reason of the negligence of any person in the service or employment of the master or employer, who has any superintendence intrusted to him, whilst in the exercise of such superintendence;" or within subdivision 5—"when such injury is caused by reason of the negligence of any person in the service or employment of the master or employer, who has charge or control of any signal, points, locomotive, engine, switch, car, or train upon a railway, or any part of the track of a railway."

That superintendence of this force of laborers and the work in which they were employed was intrusted to Hackett, constituting him the representative of the company, is too clear to admit of doubt; also, that he had control of the movements of the hand-car. The question then is, was the injury of the deceased caused by reason of Hackett's negligence whilst in the exercise of such superintendence, or while he had control of the car? In the discharge of its duty to use due care and diligence to guard its employès against danger, by providing reasonable precautions, the company adopted rules and regulations requiring, when the track is obstructed from any cause, so as to prevent the passage of trains, in order to insure safety, that danger or caution-signals be displayed at least nine hundred yards from the obstruction, and making it the duty of every foreman or other person, in charge of a force engaged in repairing the track, to keep himself supplied at all times, and have ready for immediate use, proper flags; also, that no excuse will be allowed for failure to display proper signals when the track is obstructed, and forbidding the foreman to occupy the main track with a hand-car, unless fully protected by flagmen in both directions at the required distance.

The work train was at that time regularly employed on that part of the road, and was known to be east of the trestle where the force was at work. At what time it would pass was unknown, but its arrival might be momently expected. Not having been flagged, those in charge of the work train had no reason to expect the hand-car was on the track, and it was not their duty to look out for it; they were governed by signals. The regulations requiring signals to be displayed

were reasonable and prudent, and afforded sufficient protection against danger, unless in extraordinary emergency. It was the manifest duty of Hackett to station flagmen at the prescribed distance, and such was his custom. Had the regulations been observed, the collision would not have occurred, and the deceased would not have been killed. Ordinary prudence required that he should display the caution signals. Under the circumstances, a careful and prudent man would have done so. Though the company had adopted suitable regulations for the government of the foreman, defendant is responsible, under the statute, for the injury of a servant, caused by the negligence of the person to whom the superintendence is intrusted, while in the exercise of such superintendence, though the negligence may consist in a failure to observe such rules. The failure to display the signals was negligence, and the proximate cause of Shelton's death, rendering the company liable therefor, unless he was guilty of contributory negligence, which defense is not presented by the pleadings.

The first, second, fifth and seventh counts of the complaint are framed under the second subdivision, and the third and sixth counts under the fifth subdivision, of section 2590. Some of them may contain unnecessary allegations, but the evidence showing the facts herein above stated was admissible under each. For this reason, the charges to the effect that, if the jury believe the evidence, they must find for defendant under the first, second, fifth and sixth counts respectively, were properly refused; also, the affirmative charge in favor of defendant under the whole complaint. There is no evidence tending to support the fourth count, which alleges that the injury was caused by the negligence of the engineer in charge of the construction train. It would be better to relieve the case of complication by striking out this count. Charges thirteen and fourteen asked by defendant were abstract, and calculated to mislead, there being no evidence tending to show that the orders of the foreman were wrong or negligent. Neither count of the complaint, as we understand, bases plaintiff's right to recover on the ground that the death of Shelton resulted from his having conformed to the orders or directions of Hackett. The averments in respect to such orders, and deceased's conformity therewith, were matters of inducement, intended to show that he was under Hackett's charge, and consequently rightfully on the hand-car. It may be, however, that in order to prevent the supposed misleading tendency of the court having read to the jury in the general charge subdivision 3 of section 2590, charge sixteen requested by defend-

[Richmond & Danville Railroad Co. v. Hammond.]

ant, that a verdict for plaintiff could not be found under that subdivision, should have been given.

The remaining assignments of error go to the rulings on evidence.. There is nothing in the objection to the testimony, as to the rate of speed at which a hand-car is ordinarily run. In view of the evidence tending to show the rate of speed at which the hand-car was being run when the collision occurred, the rate of speed at which such car is usually run is a circumstance proper to be considered in determining the question of negligence; especially in connection with the fact that no caution signals were displayed. Neither is there any thing in the objection to the evidence that Hackett employed laborers, and exercised control over them and the hand-car. To entitle plaintiff to recover, under the complaint as framed, it was incumbent on him to aver and prove a case within the provisions of the statute; and in order to bring the case within the operation of subdivision 2, it was necessary for him to prove that superintendence was intrusted to Hackett; and of subdivision 5, that he had control of the hand-car. Direct, positive evidence of these facts is not indispensable; like any other fact, they may be proved by circumstances. That a person exercised authority, or had control, is a statement of collective facts, to which a witness may testify.—*Elliott v. Stocks*, 67 Ala. 290.

Shelton's habits of industry and sobriety, his state of health and net income were provable, as constituting *data* from which the amount of compensation may be determined.—*L. & N. R. R. Co. v. Orr*, 8 So. Rep. 360; 91 Ala. 548; *James v. R. & D. R. R. Co.*, 92 Ala. 231.

To determine when declarations, relating to a transaction,. form part of the *res gestæ*, often requires nice discrimination. As a general rule, approximating definiteness as nearly as practicable, it may be said, that when the declarations are the natural outgrowth of the transaction, spontaneously expressed, are so nearly co-incident in point of time with the main fact as to serve to illustrate and explain it, they are admissible, on the principle that the declarations and the main fact constitute one transaction. In *Ala. Gt. So. R. R. Co. v. Hawk*, 72 Ala. 112, it was held not permissible for a witness to testify to the statements of the engineer, made a few minutes after the plaintiff had been hurt, in answer to a question by the conductor. It is said: "The time—*a few minutes*—does not appear to be so proximate to the main transaction, nor are the declarations made otherwise so clearly connected with it, as an elucidating circumstance, as to justly authorize the conclusion that they are not merely narrative of a past occurrence,. which at the moment was finished and completed." The same

[Lehman, Durr & Co. v. Moore.]

application of the general rule was made in *Mem. & Chas. R. R. Co. v. Womack,* 84 Ala. 149. The declarations of the deceased, testified to by the witness Teasley, do not come within the rule of admissibility. They were made five minutes or more after the collision; were not spontaneously made, but in answer to the question, "*how it happened,*" propounded by some one present, after a conversation with the witness as to the extent of his injury; and do not illustrate or explain, or receive support from the transaction itself, unless it be as to his supposition that it happened from the carelessness of Hackett, in not having out a flag-man; which supposition would not have been competent evidence, had the deceased lived, and testified for himself. Also, that part of the declarations to the effect that he did not know there was a flag-man out, has the appearance of an excuse for being on the hand-car. The declarations should have been excluded.

Reversed and remanded.