# Southern Railway Co. *v.* Reeder.

*Action for Damages for Injury to Steamboat.*

(Decided June 13, 1907.  44 South. 699.)

1. *Navigable Waters; Obstruction; Drawbridges.*—A drawbridge over a navigable stream properly constructed under proper authority and properly maintained is not an unlawful obstruction to navigation; the owner being bound to provide for the safe and prompt passage of the vessels through the drawbridge.

2. *Negligence; Operation of Drawbridge; Liability of Owner.*—The owner of a drawbridge over a navigable stream is liable for injuries which proximately result by the negligence of the operator of the bridge in failing to promptly open the draw to permit vessels to pass through.

3. *Drawbridges; Operation; Regulation; Statute.*—Sections 3445, and 3446, Code 1896, although prescribing the signals to be given in approaching the drawbridge, and the amount to be recovered for failure to obey the signal, contain nothing to indicate that they prescribe the exclusive remedy for a failure to comply therewith, nor that the signals therein provided for are the only signals which the bridge tender is bound to obey; and one operating a steam boat may recover for injuries resulting proximately from the negligent operation of the drawbridge an amount other and different from that prescribed in the statute; and other signals may be agreed upon than those denoted in the statute.  In order to recover the penalty prescribed by the statute. the signals prescribed must be given.

4. *Same; Approach to Bridge; Care Required.*—A steamboat approaching a drawbridge over a navigable. river after giving the signals for the opening of the draw cannot speculate on the hazards in-

cident to the opening of the draw, but those in charge of the boat must so order their conduct as not to pass beyond the point towards the bridge where ordinary prudence would indicate that further reliance on the opening of the bridge would likely result in injury if the bridge could not be opened in time.

5. *Same; Jury Question.*—The evidence in this case examined and held to require a submission to the jury to determine the issues of the negligence of the bridge tender and the contributory negligence of those in charge of the boat.

6. *Same; Injury to Boat; Collision;; Proximate Cause.*—Where the bridge tender was primarily negligent in failing to open the draw in time, the operation of the boat by which the master undertook to stop the boat, and the striking of the pier were not such intervening causes as prevented the bridge tender's original negligence from constituting the proximate cause of the injury, there being no contributory negligence on the part of the boat crew in approaching the bridge.

7. *Damages; Measure.*—The measure of damages for the injury to the steamboat was the reasonable cost for necessary repairs and the market value of the use of the boat during the time necessary to make the repairs.

8. *Same.*—What was in fact paid for the repairs on the vessel was not the test of the value of such repairs, but if the amount paid was reasonable such payment was admissible in evidence on the issue of the value.

9. *Evidence; Declaration; Res Gestae; Compromise.*—Evidence that the morning after the injury to the vessel the bridge tender visited the vessel and inquired if the owner would take a named sum and drop the matter, was not admissible as a part of the res gestae, and was further inadmissible because it was a mere offer to compromise.

APPEAL from Lauderdale Circuit Court.

Heard before Hon. ED B. ALMON.

Action by John T. Reeder against the Southern Railway Company for damages to plaintiff's steamboat. From a judgment for plaintiff, defendant appeals. Reversed and remanded.

It is alleged that the boat was injured by coming in contact with appellant's drawbridge at Decatur, where the same spans the Tennessee river, a navigable stream, and the negligence is predicated upon a failure to open the draw on proper signal. The pleas were the general issue and contributory negligence. The facts are substantially as follows: Appellants owned and operated

a drawbridge across the Tennessee river, across which is built and operated a track for the passage of trains. That the Tennessee river is a navigable stream, on which appellee was operating a steamboat. That appellant had established signals to be given by boats for the opening of the draw, and on the 22nd of October, 1899, the appellee went up the river with his boat and gave the signals for going through. The signals were four distinct blasts of the whistle, given at intervals until understood; and the signal from the keeper of the bridge that the signal was understood was by going out on the draw span with a white light. On the evening of the day above mentioned appellee returned with his steamboat down the river, and when about 1 1-2 miles above the bridge gave the signal for opening the span. About a mile above he gave the second signal, and about half mile above the third signal. The evidence is in conflict as to whether the second signal was the signal for opening the draw, or was a signal that the boat would land at the wharf above the bridge; the signal for landing being one long, one short, and one long blast of the whistle. It seems from the evidence that, after the first opening signal was given, a train was permitted to pass over the draw, although the boat had the right of way. The evidence tended to show that the boat was slowed down after the first signal, and that after the last signal the steam was shut off and the boat allowed to float. The evidence was in conflict as to whether or not there was time after the last signal to open the draw before the boat got to the bridge. When the boat got to the bridge it was discovered that the bridge was only partially opened, whereupon the pilot undertook to put on steam and back his boat, and in doing so broke the cam yoke, rendering the boat unmanageable, whereupon the pilot steered the boat up against the stationary span

‹of the bridge, causing the injuries alleged, and that this was necessary, as there was danger of the draw span being knocked off upon the boat, destroying the lives of the passengers on the boat.   There was judgment for plaintiff in the sum of $935, and defendant appeals.

HUMES & SPEAKE, for appellant.   The complaint was demurrable in that it was not shown that defendant owed plaintiff the duty of opening said drawbridge at the time of the injury complained of.—Secs. 3445. 3446, Code 1896; Sec. 4235, U. S Rev. St.; Chapt. 299, Supp. U. S. Rev. St.   The statutory signals are the only guides and they cannot be varied by custom so as to base a right of action on negligence on the failure to comply with the custom.—97 Ala. 187; 105 Ala. 180; Lawson .on Usage & Custom, secs. 216, 453 and 460.   There was an intervening proximate cause in the operation of the boat by those in charge of it.—125 Ala. 306; *Mutch's Case,* 97 Ala. 194; *Kelcy's Case,* 89 Ala. 287; *William's Case,* 106 Ala. 254; *Quick's Case,* 125 Ala. 561; *Railroad Co. v. Reeves,* 10 Wall. 176; *Insurance Co. v. Boone,* 95 U. S. 117; 94 U. S. 169; 105 U. S. 249; 16 A. & E. Ency. of Law, pp. 428 to 446 and notes.   The negligence of the bridge tender was not the proximate cause. —*Thompson's Case,* 91 Ala. 496; *Laidlaw v. Sage,* 44 L. R. A. 216; *Benson v. C. P. R. R. Co.,* 54 Afl & E. R. R. cases, 126; *Reid v. Ry. Co.,* 53 Am. St. Rep. 296.   The declaration of the bridge tender as to giving a named sum as damages and dropping the case was not a part of the res gestae.—84 Ala. 149; 72 Ala. 112; 93 Ala. 181; 97 Ala. 211; 137 Ala. 503.   Such declaration was inadmissible because in the nature of a compromise.— 91 Ala. 615; 103 Ala. 281.   Counsel also discussed the question of damages but cite no authorities.

SIMPSON & JONES, for appellee.—Although appellant had the right to bridge the river, it was bound to open its draw so as to prevent injuries to boats and so as not to impede or unnecessarily delay navigation.—*R. R. Co. v. C. R. Co.*, 59 Fed. 190; *C. R. R. Co. v. P. R. R. Co.*, 59 Fed. 192. The negligence of the bridge operator was the proximate cause of the injury.—*King v. O. & M. R. R. Co.*, 24 Fed. 335; s. c. 25 Fed. 799; *L. & N. R. R. Co. v. Thornton*, 117 Ala. 274. The market value of the hire of the boat during the time it was under repairs is a proper element of damages.—*Williamson v. Barrett*, 13 How. 112; *The Baltimore*, 8 Wall. 385.

McCLELLAN, J.—A drawbridge, constructed and maintained under and according to proper authority over navigable waters, is not an unlawful obstruction to navigation; but the owner of the bridge rests under the duty and obligation to provide for the safe and prompt passage of vessels through the draw. Reasonable care and diligence in the use and control of the bridge is required of those in whose custody it is; and the want of such care and diligence in the performance or omission to perform the duty stated and assumed carries liability for proximately resulting injuries.— Sections 3445 and 3446, Code 1896, are penal in their nature, and so must be strictly construed. Observing this rule of construction, we cannot agree with counsel for appellant that they establish exclusively the signals to be given by vessels intending to pass a drawbridge; nor with its contention that for injuries proximately resulting from the negligence of the bridge proprietor or his employes, or from that of a boat owner, the penalty prescribed by the cited authorities is the sole and excluding remedy for the injured party. In the latter matter no such intention to exclude all other redress

can be gathered from the statute, even after exempting it from the familiar rule of construction applicable to penal enactments.

In respect to the set of signals mentioned in section 3445, the same observations are pertinent. That notice of an intention or desire to pass through a drawbridge may be properly conveyed to the tender by means other than the signals described in this section is not negatived by any language in it. The penalty stipulated, of course, could not be exacted unless the statutory conditions precedent were strictly observed. But this is far from excluding to craftsmen and bridge proprietors, suffering injuries attendant upon negligent conduct and seeking redress therefor in damages, the right to establish and use a signal method different from that provided by the statute. The gist of the action is the alleged negligent conduct of the bridge tender in opening the draw after he was by proper signals, and these given in reasonable time, advised of the intention of those in control of the approaching vessel to pass the draw. Of course, when so advised, it was his duty to promptly so adjust the draw as that safe passage could be effected. In reliance upon the performance of this duty by the defendant's employe, those in charge of the craft had the right to approach the bridge at such speed and in such control of the boat and to such nearness to the bridge as reasonable prudence and care under all the circumstances, would require. We apprehend that, short of an aproach to a drawbridge so near or under such head, or under such conditions of water and wind or other weather surroundings, as would probably, under all the circumstances, render such management of a vessel equipped with proper appliances for stopping it and for locomotion forward and backward, in charge of skilled employes, hazardous or dangerous to it or the

bridge, those in control may, without inviting the imputation of negligence on their part, take the vessel within such nearness to the structure as the circumstances and conditions adverted to would safely permit. Whether the necessary prudence was in the particular case observed, under all the circumstances attending the act, must generally be determined by the jury.

But, in reliance upon the performance of duty by the tender, the craftsman cannot, disregardful of due prudence and care, speculate upon the hazards and dangers incident to the occasion and situation. He must be at all times in such control of his vessel, which must be so equipped with the necessary and adequate machinery for control and operation as reasonable diligence would require, as that injury naturally resulting from the negligence of the tender may be, under skillful and prompt action and management, averted. The reliance upon another that he will do his duty as bound is not without limit. One ordering his conduct upon such reliance cannot go beyond that point where commensurate care and prudence would indicate that further reliance and action thereon would likely result in injury if the duty anticipated of performance was not performed. Negligence, in a proper case, inhibiting recovery for injuries received, would intervene, if the reliance, carried into action, upon another's performance of duty, was disregardful of the care and prudence the circumstances and situation presented raised as the boundary of further reliance upon the assumption that the duty would be performed. No other rule of conduct could be declared, we think, than that stated. The navigable waters are such without limitation, except that set against negligence to the injury of another and that stated with reference to duties related to lawfully maintained drawbridges. No line can be drawn for the approach of ves-

sels to such structures with a view to passage; and the relative duty of those charged with the responsibility and management of vessels in such cases must be, in respect of negligence vel non, remitted to the triors of the fact to determine whether the prudence and care exercised was that requisite under all the conditions and circumstances surrounding.—*King v. Ohio R. R.,* (C. C.) 25 Fed. 799, s. c. 24 Fed. 335. As we gather it from the record, the issues of negligence vel non on the part of the bridge tender and contributory negligence vel non of the plaintiff were properly submitted, under all the testimony, for the jury's consideration.

Proximate cause is defined thus: "That cause which, in a natural and continuous sequence, unbroken by any efficient intervening cause, produces the result complained of, and without which that result would not have occurred." It is obvious that if the tender was primarily negligent in the performance of his duty, and if there was no contributory negligence on the part of those in charge of the vessel in respect of the approach to the bridge, both jury issues and by the jury determined in this case, the operation by which the boat was undertaken to be stopped after the discovery of the partially open condition of the draw, and in which the vital yoke broke, and that without the negligence of the boatmen, was the performance of the boatman's duty, and that duty arose out of the negligent conduct of the tender. It was the necessity to safety—a necessity entirely and only attributable to the original negligence of the tender. The failure to stop the boat, short of injury, was due, it appears, solely to the breaking of the yoke; but that happening cannot, we think, avail to absolve the defendant from its liability from the natural consequence of its misconduct, which misconduct commanded the effort to stop the boat in the course of which the

machinery, without warning, broke. The effort to avert the result was in the interest not only of plaintiff's safety, but was also a motion to save a situation created by the defendant's negligence. To allow it exoneration from liability on that score would be to repudiate for it an act taken in obedience to a duty owed by the plaintiff arising because of the negligent defendant. One endangered by another's act or omission cannot supinely drift to injury. He must with due diligence exert himself to avert the injury. If his effort, well directed, failed without his fault, certainly no exemption from liability obtains to the advantage of him producing the necessity to make the effort. The breaking of the yoke was no intervening, efficient cause, severing the causal connection between the inceptive negligence and the resulting injury; nor can it be asserted, as matter of law, that the direction of the drift of the boat against a stationary span, with the purpose to avoid a collision with the swinging draw, and partially opened, was an act breaking the train of sequences put in operation by the primary negligence; nor can it be said that such an act was contributory to the resulting injury, since the unmanageable vessel was certain to strike the structure as it floated with the current of the stream.

The play upon the term "understood," with reference to the signals alleged to have been given, is not warranted. It was the legal duty of the defendant to provide a tender to understand and respond to proper signals and without undue delay open the draw. This duty is not measured by, nor the performance of it conditioned upon, the mere understanding of the signals by the tender. If the proper signals are given, the duty to safely and with due dispatch open the draw arises; and the failure of the tender to understand the proper signals or to hear them is no excuse for the dereliction in duty.

The rule for the measure of damages, applicable to this case and in keeping with which the jury were instructed and defendant's requested instructions refused, is affirmed in the case of *Williamson v. Barrett*, 13 How. (U. S.) 112, 14 L. Ed. 68, which is elaborately annotated in 5 Rose's Notes, 145 et seq., to be those damages that would remunerate the plaintiff for necessary repairs and the market value of the use or hire of the vessel during the time necessary to make the repairs and fit her for business. Both these elements of damage are, with reasonable certainty in amount, ascertainable, and we are unable to see how any injustice therefrom could result. The lower court, therefore, was not in error in its rulings in respect of the measure and elements of damages involved in this case.

Over the objection of defendant testimony was admitted to the effect that, the next morning after the injury complained of took place, the bridge tender visited the vessel and inquired whether the plaintiff would take a named sum and drop the matter. This was error. The alleged declaration of the tender was not a part of the res gestæ of the immediate transaction for redress of which the action was brought. Its inadmissibility is adjudged in the following decisions among others, of this court: *Womack's Case*, 84 Ala. 149, 4 South. 618; *Hawk's Case*, 72 Ala. 112, 47 Am. Rep. 403; *Moore's Case*, 137 Ala. 503, 34 South. 617; *Pearson's Case*, 97 Ala. 211, 12 South. 176; *Hammond's Case*, 93 Ala. 181, 9 South. 577. The tender's alleged statement was also erroneously admitted, because, even if authorized by defendant, it was a mere offer to compromise.—*Collier v. Coggins*, 103 Ala. 281, 15 South. 578.

Since another trial must be had, it is not necessary that specific consideration of other assignments of error be given. But it will probably be well, when the case is

[Town of Elba v. Bullard.]

again tried, to limit the testimony tending to show the damage, within the rule stated above, to those facts which will enable the jury, if they find for the plaintiff, to determine what the reasonable market value of the hire of the vessel during the time reasonably necessary to repair the damage sustained and the reasonable value of the repairs, or, to state the latter element differently, what the reasonable cost of such repairs was at the time made. What was in fact paid for the repairs is not the test,though, if shown to be reasonable in amount, it is evidence to go to the jury for their consideration.

For the errors indicated, the judgment must be reversed, and the cause remanded.

Reversed and remanded.

TYSON, C. J., and DOWDELL and ANDERSON, JJ., concur.