# Southern Iron & Steel Company *v.* Boston.

## *Injury to Servant.*

(Decided November 7, 1914.  66 South. 684.)

1. *Master and Servant; Injury to Servant; Complaint.*—In an action for the death of a servant, counts in a complaint based either upon the common law duty of the master to furnish a safe place to work, or under the Code for any defect in the ways, works, plants, etc., which allege the cause of the injury to be the failure to make fast the cable to a mine car, are defective for failing to negative the fact that such failure may have been due to the negligence of the servant who fastened the cable to the car.

2. *Same.*—A count alleging that the injury resulted from the fact that the chain by which the cable was attached to the mine car was not of sufficient strength for the purpose for which it is used, was sufficient under subdivision 1, section 3910, Code 1907, as the chain was defective, if it was too weak for the purpose for which it was used, notwithstanding it was sound otherwise.

3. *Same; Defective Appliances; Jury Question.*—Where there was evidence as to the size and strength of a chain by which a cable was attached to a mining car, and by the breaking of which a servant was injured, and as to its relative size and strength as compared to the cable, there was sufficient evidence to take to the jury the question whether it was sufficiently strong, although the bare fact that the chain broke would not be sufficient.

4. *Same; Contributory Negligence.*—Where the evidence was in conflict whether there was a rule of the mining company prohibiting miners from riding down the slope on the cars, and as to whether it applied to the circumstances of the case, the question of the contributory negligence of the servant was for the determination of the jury.

5. *Same; Assumption of Risk; Selection of Dangerous Way.*—Where a servant rode down a slope on a mine car loaded with timber, and it was not conclusively shown that it was dangerous to ride, he did not assume the risk as a matter of law merely because it would have been safer to walk; the rule that one must select the less dangerous way not applying where the less safe way is not obviously or necessarily dangerous.

6. *Death; Damages; Measure.*—In an action for the death of a servant, brought under the Employer's Liability Act, the damages are purely compensatory, and the measure is that sum which being put at interest will each year by taking the interest and a portion of the principal, equal the net earnings of deceased, the portion of the principal taken being such that it will all be exhausted at the termination of the life expectancy of deceased.

APPEAL from Bessemer City Court.

Heard before Hon. J. C. B. GWIN.

Action by Mrs. Mattie Boston, as administratrix, against the Southern Iron & Steel Company for damages for the death of her intestate. Judgment for plaintiff, and defendant appeals. Reversed and remanded.

Count A is as follows: "Plaintiff claims of defendant　*　*　*　the sum of　*　*　*　as damages for that, on to wit, June 5, 1912, defendant was operating a coal mine　*　*　*　and plaintiff's intestate was in its service and employment as a machinist, and plaintiff avers that on said day and date while her intestate was in the performance of his duties, and in the act of riding down the slope of defendant's mine in a trip of cars, the said trip broke loose from the cable or chain, thereby causing intestate to be thrown to the ground　*　*　*　bruising and injuring him so that he died as a result of said injury. And plaintiff avers that the death of her said intestate was proximately caused by reason of the negligence of defendant in that it negligently failed to use ordinary care to furnish plaintiff's said intestate with a reasonably safe place in which to do his said work whilst in the discharge of his duties as aforesaid, in this, that said cable was not securely and sufficiently made fast, and as the result thereof came loose, causing said cars to run down said slope, and causing death of plaintiff's intestate as aforesaid."

Count C: Same as A down to and including the words "result of said injury" where they first occur therein, and adds: "Plaintiff avers that the proximate cause of the death of her said intestate was a defect in the condition of the ways [following the words of the statute], in that said chain was defective, in that

said cable was made fast by said chain, and that said chain was weak and not of sufficient strength for the purpose and because thereof said chain broke, causing said cable to become loose and causing said cars to run back down said slope, causing death of plaintiff's intestate."

CHARLES A. CALHOUN, for appellant.

BONDURANT & SMITH, for appellee.

ANDERSON, C. J.—Count A attempts to state a cause of action under the common law for a failure by the defendant to exercise reasonable care in furnishing the plaintiff's intestate with a reasonably safe place to work, but does not charge any inherent defect or danger in the plant, ways, or works, or any other neglect by the master in the performance or discharge of a nondelegable duty. In other words, the negligence ascribed was the failure to discharge, by some servant, the delegable duty of properly or sufficiently fastening the cable to the trip or chain. The cable may be a part of the plant, ways, or works, but there is no charge that it was not adaptable to the use for which it was furnished or that it was defective or dangerous, and from aught that appears from the count, the works may have been perfectly safe and the cable sound and sufficient and the only negligence charged is the failure of some servant to properly fasten the cable to the trip or chain so that it would not come loose.

Count B, while under subdivision 1 of section 3910 of the Code of 1907, contains the same infirmity as pointed out to count A. It charges a defect as the cause of the injury, yet the only negligence attempted to be charged, is the failure to sufficiently fasten the cable

to the trip or chain, non constat, the cable may have been perfect and the cause of the accident was the failure of some servant to properly fasten or attach it to the trip or chain. The case of *Sloss Co. v. Dobbs,* 187 Ala. 452, 65 South. 361, in no way conflicts with the present holding, as the opinion in said case holds that the counts, in effect, charge the absence of an appliance for the purpose of holding the cable in place; thus charging the absence of a necessary appliance in the ways and works and the said absence of which could be a defect in the condition of same.

Count C was not subject to the defendant's demurrer. It charges a defect in the chain, in that it was weak and not sufficient for the purpose for which it was furnished and used and that it broke when being used. It does not charge that the chain was injured or possessed any special defects, but that it was too weak, and therefore insufficient to perform the functions for which it was furnished. It matters not how sound and perfect the chain may have been, if it was not reasonably safe and fitted to serve the purposes for which it was furnished it would be a defective chain under the statute.—*Watson Co. v. Watson,* 183 Ala. 326, 62 South. 859, and authorities there cited.

As this case must be reversed upon the pleading we shall only discuss the refused charges in so far as they may relate to count C, the only count which went to the jury and as to which the demurrer was not well taken. Said count charges that the chain was defective, in that it was too weak and broke. If the chain was too weak to reasonably perform the functions for which it was furnished, this constituted a defect under the statute, whether it was or was not unsound. There was proof that the chain broke, but this, in and of

itself, would not show a defect or that it was too weak; but there was evidence as to the strength of the chain and of its relative size and strength as compared to the cable with which it was to be attached and used, and it was a question for the jury as to whether or not a stronger chain should not have been furnished and whether or not the master knew or ought to have ascertained that said chain was too small or too weak.

It was also a question for the jury as to whether or not the intestate was guilty of contributory negligence in going down in the car upon this particular occasion, in violation of a rule of the master prohibiting him from doing so, as there was a conflict in the evidence as to whether or not such a rule existed and whether or not it applied to persons going down in the cars with timbers to scotch when the cable was being changed.

It was also a question for the jury to determine whether or not the intestate was guilty of assumption of risk in going down in the car instead of walking down, as there was proof from which the jury could infer that the usual and customary way was to take the timber down and go with it in the car, and, while it may have been safer to walk down, the proof does not conclusively show that it was dangerous or hazardous to ride down. It is also true that the defendant proved a statement made by Boston the previous day that the men usually rode down to scotch when the cable was being changed, but that he would walk down if the work should fall upon him, yet he did not say that it was specially hazardous or dangerous to ride down or that it was the usual or customary way to walk down. Of course, where there are two ways of discharging a duty by an employee, one safe and the other dangerous, he must select the safe or less dan-

gerous way, but this rule does not apply when one way is perhaps safer than the other, but the other is not obviously or necessarily dangerous, and especially if custom permits the latter. It may be safer to lead a horse than to ride him when engaged in the service of the master, but it may not be necessarily dangerous to ride the horse, and it may be the custom to ride instead of to lead the horse. One may be safer than the other, but the least safe way may not be so dangerous or hazardous as to render the use of same such an act as to preclude the employee from recovery, as matter of law, upon the doctrine that he assumed the risk. Of course, it was safer for the intestate to have walked instead of going down in the car, but the proof was by no means conclusive that the only safe and proper way was to walk down and that it was known to be dangerous and hazardous to ride down or that there was an existing rule forbidding the persons from riding down whose duty it was to go down and scotch the cars when the cable or rope was being changed.

As this case must be reversed, and we cannot now tell what issues may be raised on the next trial, we deem it unnecessary to consider the other assignments of error. It is sufficient to say that, should the plaintiff stand on count C alone, or rely upon the Employers' Act for a recovery, the damages recoverable are purely compensatory, and the rule as to the measurement of same is laid down in the case of *Reiter-Connolly Co. v. Hamlin*, 144 Ala. 192, 40 South. 280, and cases there cited.

The judgment of the city court is reversed and the cause is remanded.

Reversed and remanded.

McClellan, de Graffenried, and Gardner, JJ., concur.