(85 South. 455)

## THOMAS FURNACE CO. v. CARROLL.
### (6 Div. 973.)

(Supreme Court of Alabama. Feb. 5, 1920.
On Rehearing, May 20, 1920.)

**1. Master and servant ⬉247(5) — Where servant was violating statute or order, master's negligence must be proximate cause.**

That there may be recovery for injury to servant while riding a loaded car from coal mine in violation of a statute or a known rule or direction of the master, or when he had negligently given a signal for high speed, the master's subsequent negligence must have been the proximate cause of the accident.

**2. Master and servant ⬉284(3) — Whether employé injured was properly riding car from coal mine held for jury.**

Whether the employment and duty of an employé in a coal mine, injured by derailment of a loaded water car, was such that under Gen. Acts 1911, pp. 500, 534, § 98, he was properly riding on it, *held* under the evidence a question for the jury.

**3. Master and servant ⬉285(11) — Proximate cause of servant's injury question for jury.**

Evidence, in action for injury to employé from derailment of car which he was riding from mine, *held* to make jury questions as to who gave the running signal, what it was, and what was the proximate cause of the derailment.

**4. Trial ⬉140(1) — Contradictions between direct and cross examination make question of credibility for jury.**

Material contradiction between testimony on direct and cross examination of witness does not warrant the court in disregarding his testimony, but makes its credibility a question for the jury.

**5. Master and servant ⬉274(3) — That another was permitted to ride car confirmatory of permission to injured employé.**

As confirmatory of testimony that the injured employé was permitted to ride loaded cars from the coal mine, another employé in the same work could testify that the superintendent had told him to ride such cars, especially where the superintendent had testified that he had given contrary orders to the men in that work.

**6. Master and servant ⬉274(3) — Capacity in which injured servant was employed admissible to show right to ride on mining car.**

Defendant's testimony tending to show that the injured coal mine employé was not employed as a chainer, who might ride a loaded car, as claimed by plaintiff, but as rapper, testimony that the rapper and chainer is supposed to give the signal to the engineer for running the car is pertinent as tending to show the duties of rapper and chainer were the same.

**7. Master and servant ⬉270(14) — Obstruction admissible on issue whether engineer acted on signal.**

Relative to question whether after starting from coal mine of loaded car, by derailment of which employé riding thereon was injured, any signal for change of speed was given by the superintendent and acted on by the engineer, evidence as to whether there was any obstruction to view between them was competent.

**8. Trial ⬉140(1) — Whether testimony is to be believed held for jury.**

Whether testimony is to be believed notwithstanding witness' prior admission contrary to his testimony is for the jury to say.

**9. Evidence ⬉110 — Prior contradictory statement to be considered only to impeach.**

Testimony of a prior statement of witness contrary to his testimony is to be considered only to impeach him, and not as evidence of the truth of the statement.

**10. Trial ⬉207 — Instruction limiting effect of impeaching testimony should be given.**

Requested instruction limiting to impeachment prior contradictory statement of witness should be given.

**11. Appeal and error ⬉1067 — Refusal of instruction limiting effect of impeaching evidence prejudicial.**

Refusal of proper requested instruction limiting effect of impeaching evidence, it not being covered by the general charge or other instructions, was prejudicial (Gen. Acts 1915, p. 815).

**12. Master and servant ⬉289(39) — Whether subsequent negligence or that of injured employé was proximate cause held for jury.**

Whether negligence of superintendent subsequent to that of employé injured in riding car from coal mine was proximate cause of accident *held* under the evidence a question for the jury.

**13. Death ⬉95(3) — Damages purely compensatory.**

Damages recoverable by administrator of employer for death of employé are purely compensatory, such a sum as with interest will yield the amount, for deceased's life expectancy, of his yearly contribution to his family.

### On Rehearing.

**14. Master and servant ⬉289(35) — Whether rule was habitually violated held for jury.**

Whether employé in mine, injured while riding on car, was instructed by master not to ride thereon, and, if so, whether such instruction was habitually violated, with the master's knowledge and consent, by those in that employment, *held* under the evidence a question for the jury.

Appeal from Circuit Court, Jefferson County; J. C. B. Gwin, Judge.

Action by L. C. Carroll, as administrator of Sam Carroll, deceased, against the Thomas Furnace Company for damages for death of

---

⬉For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

intestate while in defendant's employ. Judgment for plaintiff, and defendant appeals. Reversed and remanded.

The following charges are referred to as being refused to the defendant:

B. The court charges the jury that they are not authorized to find from the evidence in this case that Will Hill signaled the engineer to pull the car out of the mine on the occasion it wrecked and inflicted on the deceased injuries from which he died.

J. The court has permitted the witnesses Quinn and Williams to testify to an alleged statement claimed to have been made by the witness Hill as to the giving of the signal upon which the car was pulled out of the mine. This testimony cannot be considered as evidence of the truth of such statements, but such evidence was admitted solely for the purpose of impeaching the testimony of the said Will Hill.

Stokely, Scrivner & Dominick, of Birmingham, and Ben G. Perry, of Bessemer, for appellant.

At the time deceased was killed, he was riding a haulage car in violation of Acts 1911, p. 534, § 98. 199 Ala. 231, 74 South. 360; 79 South. 300. The fact that deceased was riding the car. in defiance of the superintendent's orders not to is a complete defense to this action. 177 Ala. 487, 59 South. 264; 191 Ala. 514, 67 South. 687; 202 Ala. 289, 80 South. 354; 156 Ala. 290, 47 South. 149; 110 Ala. 143, 20 South. 67; 105 Ala. 561, 17 South. 41. The deceased was guilty of contributory negligence in failing to signal the engineer. 189 Ala. 652, 66 South. 632; 197 Ala. 400, 73 South. 17. The fact that others had been instructed to ride the car prior to the employment of the deceased was not admissible. 110 Ala. 143, 20 South. 67; 110 Ala. 266, 20 South. 132; 97 Ala. 187, 13 South. 209. Charge J should have been given. 156 Ala. 298, 47 South. 239; 152 Ala. 227, 44 South. 699, 126 Am. St. Rep. 23; 158 Ala. 491, 48 South. 119. As to the measure of damages, see 144 Ala. 192, 40 South. 280.

Mathews & Mathews, of Bessemer, for appellee.

As a chain or trip rider intestate was authorized to ride out. Acts 1915, p. 534, § 98. The negligence of Smith afforded proximate cause of the death. 160 Ala. 597, 49 South. 369. It is competent to show that a witness had made statements in conflict with his testimony. 141 Ala. 55, 37 South. 390. The superintendent must guard against accidents. 159 Ala. 182, 49 South. 301.

THOMAS, J. The suit is for personal injury under the Employers' Liability Act, Code, § 3910. The complaint avers the duties of employment of said intestate at and immediately preceding the time of his fatal injury as that of a "trip rider" or "chainer" on coal cars used in the conduct of defendant's business of mining coal.

The trial was had upon the first and seventh counts, based on the second subdivision of the statute (Choctaw Coal & Min. Co. v. Dodd, 201 Ala. 622, 79 South. 54; Wilson v. Gulf States Steel Co., 194 Ala. 311, 69 South. 921); and on the third count, rested on the first subdivision.

Defendant pleaded the general issue and contributory negligence, and further set up in several pleas that plaintiff's intestate was guilty of proximately contributing to his injury, in that—

He was an employé of defendant as "a rapper and as such was charged with the duty of rapping or striking the signal wire leading from the engine into the mine, to signal the engineer when to pull the car out of the mine which was being used for the purpose of drawing water from the mine; and that the method of signaling in force at the defendant's mine at the time, if it was desired that the car should be drawn slowly, was to rap or strike the wire three times, and if there was no reason why the car should be drawn slowly, to rap or strike the signal wire one time; * * * that plaintiff's intestate was riding on said car which was used for drawing water from the mouth of the mine, and that it was derailed, and plaintiff's intestate was thereby caused to sustain the injuries from which he died, and that plaintiff's intestate, before boarding said car for the purpose of riding out of the mine, rapped or struck the signal wire only one time, and that said car was, in response to said signal so given by plaintiff's intestate, being drawn at the usual rate of speed when such signal is given, and that running at such rate of speed when a human being is riding upon it is liable at any time to derail, and that in the exercise of ordinary care plaintiff's intestate should have signaled or rapped said signal wire three times, but he negligently failed so to do, or to otherwise notify defendant's engineer that he was on board said car, and as a proximate consequence, on account of the high rate of speed the car was being drawn from said mine, it was caused to derail and inflict upon plaintiff's intestate the injuries from which he died."

The Act of April 18, 1911, "To regulate the mining of coal in Alabama," stipulates that—

"No person, or persons, except those in charge of trips, superintendents, mine foremen, electricians, machinists and blacksmiths and others, when required by their duty shall ride on haulage trips, except a special trip of entry cars may be operated for the purpose of taking employés into and out of the mine, when the distance to and from their work exceeds one mile. No person, excepting trip riders, shall ride on loaded car or cars, and they shall ride only the front or rear end of the trip." Gen. Acts 1911, pp. 500, 534, § 98.

It should be said that the duties of trip riders or chainers are shown to be one and the same, namely, to fasten to the cable loaded cars or other cars to be carried out of the mine, and to signal the engineer when

the same are so attached and ready for movement. Plaintiff's evidence showed that it was the duty of such trip rider to ride the loaded cars being carried out of the mine and in like manner to return them. This was permitted by the act of 1911 (Gen. Acts, 1911, p. 534, § 98).

The evidence tended to show that the speed of the car was regulated by "bell signals" or "a drop of the hand"; that a one-bell signal meant to take the cars to the top at such speed as the engineer thought proper; a two-bell signal indicated a fast movement of cars; and a three-bell signal, slow movement. A drop of the hand communicated by a person on the outside of the mine indicated that the cutting down of the speed and stoppage of the car was desired. A signal for a fast movement of the car was further indicated by witnesses as a "high-ball," which was communicated by the foreman without the mine to the engineer in charge within the mine by an indicated "wave of the hand"; and, when communicated to the engineer by the foreman from within the mine, was "two bells when the car is in motion."

[1] If, at the time plaintiff's intestate met his death, he was riding one of defendant's cars in the discharge of his duty and had not otherwise proximately contributed to his injury so received, a recovery may be had; if at the time he was riding the car in violation of the statute or of a known rule or direction to him of defendant or its superior officer in charge, and such prohibited act and not the subsequent negligence of defendant's agents was the proximate cause of his injury, there could be no recovery. Gen. Acts 1911, pp. 500, 534, § 98; Reynolds v. Woodward Iron Co., 74 South. 360, 362;[1] Seagle v. Stith Coal Co., 202 Ala. 3, 79 South. 301, 303. If it was the duty of the deceased to signal the engineer that he was going to ride the car and to pull it slowly, but instead he gave the signal which authorized that the car be propelled at a high rate of speed and to which the engineer responded in ignorance of intestate's presence on the car, and this was the proximate cause of the derailment of the car and of his injury, no recovery could be had. One may not recover for an injury which is the proximate result of his own negligence, unless the subsequent negligence of the master's other servant in charge had intervened between plaintiff's contributory negligence and the resulting injury for which recovery is sought. Kyker v. Hitt, 189 Ala. 652, 66 South. 632; L. & N. R. R. Co. v. Short, 197 Ala. 400, 73 South. 17.

[2] Under such respective theories of the proximate cause of intestate's injury, there was conflict in the evidence. The testimony of plaintiff tended to show that his intestate,

at the time of his injury, was "chaining" on the day shift and riding the trip, whether coal or water was being conveyed from the mine. In the language of one of the witnesses, the "chainer in the discharge of the duties of his employment had to ride the car to the top, when they wanted to change that water car, so the top crew would know what they wanted back." One of defendant's witnesses testified that he never heard of a trip rider or chainer having instructions to ride the cars, but that as a trip rider he would ride the trips in the discharge of his duties. Other witnesses for defendant denied such right or necessity of a trip rider to ride a water car. On this phase of the evidence—whether plaintiff's intestate was a trip rider and as such was at his place of duty and in the discharge thereof riding the car, of whatever nature, at the time of his injury—a jury question was presented.

[3, 4] The evidence for plaintiff tended to show that the engineer propelling the car on the trip in question was looking from where he was located straight ahead to the mouth of the mine, and there was no intervening obstruction to obscure his vision to the mine foreman or superintendent who was at the mouth of the mine. Such evidence was susceptible of the reasonable inference, as detailed by one of plaintiff's witnesses, that the superintendent or mine foreman gave a signal for a high rate of speed while the car was in motion, and, being drawn to the mouth of the mine, the engineer saw it, and in response, though running the car rapidly, he increased the movement of the car to a high rate, and that while so being propelled the wreck and resulting injury occurred, as the result of such increased speed over a defective track; it being out of alignment. L. & N. R. R. Co. v. Jenkins, 196 Ala. 136, 142, 72 South. 68.

The fact that said engineer testified that he got only one bell as a signal to direct the speed movement of the car during the trip in question and did not thereafter get a "highball" signal from the superintendent or foreman in charge, and that a car obstructed his view to the mouth of the mine where such official was stationed at the time, when considered with the other evidence in the case, did not relieve, but only accentuated, the conflict in evidence as to the fact of such signal being given by that superintendent and that the motion of the car was increased in response thereto. The engineer's testimony that he could not tell who communicated the one-bell signal to him or from what line it came, other than that it came from the inside of the mine, was in its nature a further denial of the fact that he was so operating the car in response to the foreman's signal (that official being at the mouth of the mine), and that its movement was directed by a signal from one of the two

[1] 199 Ala. 231.

chainers or rappers within the mine, in the discharge of the duties of his employment by defendant. The superintendent's or foreman's location at the mouth of the mine and his previous and immediate observation or knowledge of, or transit over the track and the place thereon where the accident occurred, are shown by the evidence to the effect that the superintendent or foreman had directly passed over said point in the track to the mouth of the mine where he was at the time of the accident.

The rate of speed at which the car was being propelled was variously stated by the witnesses, all saying that it was very fast, and the engineer testifying that he did not think the speed of the car was as much as 60 miles an hour.

The witness Hill testified that at the time of intestate's injury he attached the chain to the car and that Carroll signaled the car out, stating to witness that he was going to the top of the mine. On cross-examination this witness testified that he did not see or hear Carroll give the signal, and all he knew was that the "trip had started." Material contradiction between the direct and cross examination of a witness has been held not to warrant the court in disregarding testimony of such witness, but that its credibility was made a question for the jury. Jones v. Bell, 201 Ala. 336, 77 South. 998; Powell v. Olds, 9 Ala. 861, 865, 866. Jury questions were presented as to who gave the signal to the engineer in charge of the operation of the car on the fatal occasion and what was that signal, and as to what was the proximate cause of the derailment.

[5] The foregoing witness having testified, of the movement of the car, that plaintiff's intestate as a chainer or trip rider had expressed his intention of accompanying the car to the top of the mine, it was competent for the witness to be asked, "as a trip rider, it was your duty to ride those trips?" and answer, "I was told to ride them" by Mr. Smith, the mine foreman. This tended, in a measure, to confirm the testimony of other witnesses to the effect that plaintiff's intestate, the other of the two trip riders (contemporaneously employed by defendant in the same work), was permitted or required to ride the trips in the discharge of his duties. Especially was this testimony competent in view of the fact that the superintendent testified that he had given contrary directions to chainers as to riding the trip. So of the questions to and answers of witnesses as to the permission or duty of the two chainers while in the discharge of their duties as such to alternately ride the trip.

[6] In reply to the tendency of such evidence, defendant offered testimony tending to show that Carroll was not employed as a chainer who might ride the water car, but as a "rapper" whose duty it was to signal the engineer in and out, throw switches, block the rope, and who should not ride the water car. Thus was a conflict presented as to the capacity in which plaintiff's intestate was employed as it related to his riding the water car in the discharge of the duties of his employment. It was pertinent for the witness to state, in answer to the interrogatory whether or not the man who rode the car gave signal to the engineer, "No, sir; the rapper and chainer is supposed" to give signal. This reply tended to show the duties of rapper and chainer were the same as to giving the signals.

[7] Under the tendencies of evidence relating thereto, it was competent for plaintiff to inquire of the witness Jordan:

"Was there any obstruction or anything in the way to keep him (the engineer operating the car) from seeing Mr. Smith (the superintendent or foreman) where he was standing down there at the time this accident occurred?"

Such testimony shed light upon the question: After the signal for movement of the car was given, if a different signal for speed was then given by Mr. Smith, was it seen or acted upon by the engineer in charge? That is to say, it was pertinent to inquire whether, after the trip started and before the wreck occurred, Mr. Smith gave any signal and, if so, what the signal was.

[8] It was for the jury to say whether or not they believed the testimony of the witness Hill after his admission at the commissary that he and not Carroll had signaled the engineer to pull the car out of the mine on the occasion of the wreck. For this reason, the written charge requested by defendant, which we indicate as "B," was properly refused.

[9-11] Assignment of error 22 challenges the refusal of the court to give, at defendant's request, written charge J. This was a proper limitation of the effect of the designated impeaching evidence and not as independent evidence of the truth of such statement as the fact of a past transaction. It was admissible only to impeach the credibility of the witness, and the defendant should have been permitted so to limit its evidential effect. Kennedy v. State, 85 Ala. 326, 331, 5 South. 300; Jones, Adm'r, v. Pelham, 84 Ala. 208 (5), 4 South. 22; Mascott Coal Co. v. Garrett, 156 Ala. 290, 297, 298, 47 South. 149; Sou. Ry. Co. v. Reeder, 152 Ala. 227, 229, 236, 44 South. 699, 126 Am. St. Rep. 23; Mobile L. & R. R. Co. v. Baker, 158 Ala. 491, 495, 48 South. 119; Jones v. State, 141 Ala. 55, 58, 37 South. 390. The rule applicable to the limitation of such evidence is well stated in an early case by the District Court of the United States:

"If a witness at another time has given an account of a transaction different from that given at the trial, he may be impeached by proving what he has said at another time, on the question of his credit; but you cannot sub-

stitute the other account in the place of that which you have discredited, making it thus the evidence of the cause." Hand v. The Elvira (1829) Gilp. 60, 61 (4), 11 Fed. Cas. 413, No. 6,015; Merriman v. The May Queen, 17 Fed. Cas. 136, No. 9,481; 5 Jones on Ev. § 845 (848).

This instruction not being substantially and fairly given to the jury in the court's general charge or in charges given at the request of the parties, reversible error intervened in its refusal. Gen. Acts 1915, p. 815.

[12] The affirmative charge was properly refused upon that phase of the issues and testimony of the subsequent negligence of foreman or superintendent Smith, regardless of who gave the signal for the initial movement of the car. His testimony tended to show that he knew the chainers rode the trip from the heading where they picked up the cars to the next heading; that besides the two chainers—Hill and Carroll, plaintiff's intestate—there were other men in the mine, about and on the slope; that it was time for a change of shift; that some of the men working on the shift had started out of the mine; and that he had observed the rate of speed of the car in question. It follows that, as foreman in charge or superintendent with the knowledge of the conduct of such business at the time and place, the condition of the roadway, and transit of cars thereover, if human beings were on the trip to the mouth of the mine, and with such knowledge gave the "highball" signal in response to which the car picked up to a high rate of speed, about 60 miles an hour, knowing that persons riding thereon were in a perilous situation. The testimony further shows that said foreman or superintendent could have cut down the speed of the car by a drop of the hand, which signal could have been communicated in an instant's time, stopped the car, and in all probability averted the fatal accident. Knowing the facts, he must resort to reasonable preventive measures and may not stand idly by permitting unnecessary injury, any more than he can augment or contribute to it by a "highball" signal communicated to the engineer in charge by the movement of his hand. T. C. I. & Ry. Co. v. Candy, 160 Ala. 597, 49 South. 369; Sloss-Sheffield S. & I. Co. v. Green, 159 Ala. 178, 182, 49 South. 301; Choctaw Coal & Min. Co. v. Dodd, supra, 201 Ala. 622, 79 South. 56.

The several affirmative charges requested were properly refused.

[13] In an action by an administrator for damages for death of an employé, the damages recoverable are purely compensatory, and the rule as to the measurement of the same has been stated to be: That which gives such a sum as, being put to interest at the rate of 8 per cent., will each year, by taking a part of the principal and adding it to the interest, yield the amount of the deceased's yearly contribution to his family

(less his personal expenses), and so that the whole remaining principal, at the end of deceased's expectancy of life, added to the interest on this balance for that year, will equal the amount of his yearly contribution to his family, less his personal expenses. Reiter-Connolly Mfg. Co. v. Hamlin, 144 Ala. 192, 212–217, 40 South. 280; Sou. I. & S. Co. v. Boston, 190 Ala. 30, 35, 66 South. 684; Marbury Lumber Co. v. Heinege, ante, p. 241, 85 South. 453.

For the error indicated, the judgment of the circuit court is reversed, and the cause is remanded.

Reversed and remanded.

ANDERSON, C. J., and McCLELLAN and SOMERVILLE, JJ., concur.

On Rehearing.

THOMAS, J. [14] The superintendent in charge testified that he gave plaintiff's intestate "instructions not to ride the water car" and did this on two occasions—at the time of his employment and two or three days prior to the accident. Of this specific instruction he said:

"I rode this particular water car myself from the slope heading. The water would hang to the back end of the car, and that caused the front end to come clear of the track; and as it came by this particular place, there being a small angle there, instead of going to the track, it went to the ground, and I was fortunate enough to get off the car without getting hurt. I then turned back and stated to the chainers, 'for all you do, don't ride that water car.' I told Mr. Carroll that. We always furnish them chalk to mark up cars that they wanted —two cars or one car, as the case might be. They would mark on front end of the car. The chalk was furnished for anything they wanted it for, and Mr. Carroll was furnished with it."

An inference to be drawn from or tendency of this testimony was that the superintendent was referring to all of the "chainers," of whom Mr. Carroll was one. That is to say, this instruction, if given, was not more than a general instruction to the several "chainers," including Carroll. The testimony of other chainers was susceptible of the inference that no such specific instruction was given them by the superintendent. If instruction was not given to the other chainers not to ride the trip on a water car, an inference of fact would arise whether such instruction was given to one of the chainers only, to wit, to plaintiff's intestate. If the chainer associated with plaintiff's intestate at and before the accident in the discharge of duty in operating the water car had no such instruction, but to the contrary was instructed to ride such car and to "help the top man" after having so ridden the water car to the mouth of the mine, and if he rode the water car in the discharge of his duty as a chainer, this afforded an inference of fact in the na-

ture of rebuttal to instruction to the contrary testified to by the superintendent, or as tending to show that, if such instruction was given plaintiff's intestate at the time of his employment, it was habitually violated with the master's consent. A jury question was presented.

If plaintiff's intestate came to his death by and in the violation of a positive instruction of his superior "not to ride the water car," and which instruction was or had not been habitually violated by him and the other chainers with the master's knowledge, recovery may not be had. The conclusion announced is not contrary to R. & D. R. Co. v. Hissong, 97 Ala. 187, 13 South. 209; L. & N. R. Co. v. Mothershed, 110 Ala. 142, 20 South. 67; King v. Woodward Iron Co., 177 Ala. 487, 59 South. 264; Red Feather Coal Co. v. Murchison, 202 Ala. 289, 80 South. 354.

The application for rehearing is overruled.

ANDERSON, C. J., and McCLELLAN and SOMERVILLE, JJ., concur.