37 So.2d 225

### BLASENGAME v. STATE.

8 Div. 660.

Court of Appeals of Alabama.

June 29, 1948.

Rehearing Denied Aug. 3, 1948.

Thos. C. Pettus, of Moulton, for appellant.

A. A. Carmichael, Atty. Gen., and Hugh F. Culverhouse, Asst. Atty. Gen., for the State.

HARWOOD, Judge.

This strange and sordid case grows out of appellant's conviction on an indictment charging assault with intent to murder.

The injured woman was May Bell Lancaster, twenty years of age, and we will hereinafter refer to her as the prosecutrix.

The State's evidence tends to show that on Saturday, 17 May, 1947, the prosecutrix joined Vernie Terry and three boys, one of whom was Vernie's brother.

This group rode around in a car all night. They got out of the car in Courtland on Sunday morning. Later that morning the prosecutrix, Vernie Terry, "Big Boy" Terry, and William Franklin Terry obtained a taxi and rode out into the country to a place near Mattie Blasengame's home in Lawrence County, arriving there around 9 A.M.

This group's activity until around 2:30 or 3 that afternoon is rather cloudy from the record, but it seems that several of them, with some additional arrivals, were at Mattie Blasengame's house and yard at this later time. It is clearly inferable from the record that most of the party were drunk.

According to the prosecutrix she went behind the house with one J. W. Hamilton to take a drink. At this time the appellant came up, and the prosecutrix testified that "When he come in there he didn't stay but a little bit till they made occasion to lay hands on me, to overpower me, to take me up there in the woods, to do as they pleased with me."

According to the prosecutrix, Hamilton and the appellant did take her to some nearby woods. There they overpowered her and Hamilton had sexual intercourse with her. Immediately after Hamilton had completed his act with her the appellant began to have sexual intercourse with her. During this second attack the prosecutrix alleges she became unconscious.

Late that afternoon the prosecutrix was discovered lying unconscious in the woods. Her clothes were pulled above her waist. A broken bottle was near by. Some of the witnesses who observed prosecutrix at this time at first thought she was dead. Pulse was discovered in her body, however, and she was carried to a hospital in Moulton.

Dr. Dyar, who saw her at the hospital shortly after she was admitted, testified that at this time the prosecutrix was unconscious, and smelled of whiskey. Her clothes were quite bloody. Since she was unconscious, he only examined her that night to find the source of the blood.

The next morning, upon a more complete examination Dr. Dyar discovered a cut about one inch deep extending through the vagina, or birth canal, into the rectum, "a complete cut joining the two openings." There was also a superficial cut extending on up into the vagina as far as the birth canal goes.

In Dr. Dyar's opinion this wound had been caused by a sharp cutting instrument, and could not have resulted from sexual intercourse.

No evidence of a recent abortion was found by Dr. Dyar at this time.

In Dr. Dyar's opinion, there was a probability of death to the prosecutrix if she had not received medical attention.

Prosecutrix still suffers from the effects of this wound, and will have to undergo an operation looking toward further relief from its effects.

It also appears from Dr. Dyar's testimony that this unfortunate girl was about three months pregnant at the time he testified in the trial below on 13 August 1947.

Vernie Terry testified that she saw the prosecutrix and Hamilton go into the woods, and later the appellant went into the woods in the same direction. After a while she saw Hamilton come out of the woods, but never did see the appellant come out. After she saw Hamilton come out of the woods she left the scene in a taxi.

Jimmie Roberts, who lived near Mattie Blasengame's place, testified he was at Mattie Blasengame's on the Sunday in question.

He saw the prosecutrix and she was drunk and "mighty near past going." She walked to the woods, in a staggering condition, accompanied by Hamilton. In 10 to 15 minutes Blasengame followed. According to this witness Blasengame emerged from the woods first, and later he saw Hamilton come out.

This witness denied he had told Mr. Miller, a State Investigator, that Hamilton was the first to emerge from the woods, though Miller testified that he had so stated.

Ed Miller, former Sheriff of Blount County and presently an Investigator for the State, testified that several days after the commission of this offense he went to appellant's home in Decatur to arrest him. Miller was accompanied by the Sheriff of Morgan County, a Deputy Sheriff, and police officers of the City of Decatur. Miller entered the front of appellant's house. Appellant started out of the back door, but when he saw the policemen covering the rear of the house he came back and was arrested by Miller.

After proper predicate as to their voluntary character certain statements made by appellant on this occasion were recounted by Mr. Miller.

Appellant stated to Miller that he followed J. W. Hamilton and prosecutrix into the woods and at her solicitation had intercourse with her, for the price of $2, and had then left the prosecutrix in the woods.

Appellant said he had worn overalls on this occasion. Miller, in appellant's presence, asked his wife where the overalls were and she replied she had washed them and they were hanging on a clothes line in the yard. She then took Mr. Miller to the yard and pointed the overalls out.

Miller called appellant's attention to a stain on the right leg of the overalls, and appellant then stated that the overalls he then had on were the pair he had worn.

Based on his 14 or 15 years of experience as a peace officer, and having seen many bloody clothes, this witness said that in his judgment this stain "appeared to be blood—looked like a blood stain," and followed this with a statement that in his judgment the stain on the overalls was blood.

Over the objection of appellant that "it isn't shown it is blood" the overalls were received in evidence.

The court did not err in overruling appellant's objection on the ground assigned for the reason that the witness Miller, without objection being interposed had

testified that the stain was, in his judgment, a blood stain. True, objections, if interposed, should have been sustained to this opinion evidence, which could properly be given only by an expert after proper laboratory tests. Our cases holding that any one, including lay witnesses, may testify as to blood stains, because such fact is capable of determination by the average person, deal with freshly ejected blood, or with blood stains that have not been altered by washing, etc. Certainly, where it is shown that the alleged stain is on a garment that has been laundered, then more than opinion testimony by a non expert should be required if the testimony is to rise above guesswork.

■ However, no objection having been interposed to 'Miller's statement that the stain was in his opinion blood, the overalls, in this condition, shed light upon a material meaning and tended to explain the transaction at issue. Moore v. State, 30 Ala. App. 552, 9 So.2d 146; Allford v. State, 31 Ala.App. 62, 12 So.2d 404; Reedy v. State, 246 Ala. 363, 20 So.2d 528.

For the defense evidence was introduced tending to show that the prosecutrix was very drunk preceding her trip to the woods.

Two of the women present testified that the prosecutrix had during the afternoon accompanied them to a barn and while there had said that she was pregnant, and was going to "get rid" of the child.

The appellant testifying in his own behalf recounted that when he first saw the prosecutrix on the Sunday afternoon in question she was drunk. He heard her say she was pregnant and had to do something about it.

J. W. Hamilton and the prosecutrix went into the woods, and in about an hour he followed them. When he discovered the pair in the woods they were in the act of sexual intercourse. Prosecutrix then solicited him to have intercourse for the price of $2, and he did, and gave her the $2. Thereafter he departed, leaving Hamilton and the prosecutrix in the woods. Appellant asserts he did not thereafter return to the woods, but later saw Hamilton emerge therefrom.

Appellant denied that he cut or injured the prosecutrix in any way during his relations with her, nor did he see any blood on her at any time.

Appellant denied he had made any attempt at flight when he was arrested.

He asserted that the overalls introduced in evidence had not been worn by him on the day he was with the prosecutrix. He contended the stain on the right leg of the garment had been made by juice or amber from a pipe.

Appellant's counsel strenuously argues that the lower court erred in refusing the appellant's request for the affirmative charge, and also in denying appellant's motion for a new trial on the grounds, among others, that the verdict is not sustained by the evidence.

■ We pretermit consideration as to the propriety of the court's refusal of the appellant's request for the affirmative charge. It must be admitted that the State's evidence tending to show the criminal agency of this appellant in perpetrating this horrible offense is rather inconclusive. This very inconclusiveness however convinces us that regardless of the court's action in refusing appellant's request for the affirmative charge, this verdict and judgment can be supported only by resort to speculation and conjecture.

■ If the prosecutrix's testimony be believed by the jury under the required rule, clearly the offense of rape was made out. But this appellant *was not charged with rape, but with assault with intent to murder.*

The only evidence tending to support this offense is that this appellant had sexual relations with the prosecutrix sometimes between 2:30 or 3:00 P.M. The man Hamilton had preceded appellant into the woods with the prosecutrix. The appellant may, or may not have been the first to emerge from the woods. Regardless, both appellant and Hamilton were seen to leave the woods within a sufficient time to necessitate the conclusion that the prosecutrix lay in the woods for sometime after their departure. She was not discovered until almost sun down. Appellant claims prosecutrix was in

no way injured at the time of his departure. Whether she was, or whether the injury was later inflicted we do not know. It cannot be inferred from the record with any degree of confidence. Even the method of her injury is left to speculation. Dr. Dyar testified that it was inflicted with a sharp instrument, and could have been done with a piece of glass. A broken whiskey bottle was near prosecutrix when she was discovered. It is in the realm of surmise that she may have even inflicted the wound on herself accidentally by falling or sitting on the broken bottle.

The wives of both Hamilton and appellant were present when they went into the woods with the prosecutrix. An affidavit filed with appellant's motion for a new trial in connection with the asserted ground of newly discovered evidence sets up facts suggestive of this act resulting from enraged jealousy.

 In Ex parte Acree, 63 Ala. 234, our Supreme Court, through Stone, J., wrote:

"The humane provisions of the law are, that a prisoner, charged with a felony, should not be convicted on circumstantial evidence, unless it shows by a full measure of proof that the defendant is guilty. Such proof is always insufficient; unless it excludes, to a moral certainty, every other reasonable hypothesis, but that of the guilt of the accused. No matter how strong the circumstances, if they can be reconciled with the theory that some other person may have done the act, then the defendant is not shown to be guilty, by that full measure of proof which the law requires."

 The possibility that a thing may occur is not alone evidence, even circumstantial, that the thing did occur. Taylor v. State, 30 Ala.App. 316, 5 So.2d 117.

 The only inference supported to the required degree by the State's evidence presented in this case is that it is possible that appellant may have committed this offense. Beyond this shown possibility, resort must be had to surmise, speculation, and suspicion to establish appellant's criminal agency in the offense charged. No rule is better settled than that convictions cannot be predicated on such bases. See 6 Alabama Digest, Criminal Law, 560, for innumerable cases enunciating this doctrine.

 Regardless of our natural outrage when considering the depraved crime committed on this pitiful young woman, we are clear to the conclusion that, after making all proper allowances and indulging all reasonable intendments in favor of the court below, the verdict and judgment are not supported by sufficient evidence to permit them to be approved by us. One of the basic tenets of our Constitution and common law jurisprudence is that only the guilty shall be punished. The liberty of every individual reverts to and depends upon the absolute preservation of this shining principle. Its illumination must not be dimmed by the character of the person upon whom it falls.

 It is our opinion that the lower court erred in denying appellant's motion for a new trial because of the insufficiency of the evidence to support the verdict and judgment. The cause must therefore be reversed, and it is so ordered.

Reversed and remanded.