267 So.2d 494

**William Thomas HUDSON, alias**

**v.**

**STATE.**

**6 Div. 359.**

Court of Criminal Appeals of Alabama.

Oct. 3, 1972.

704

William J. Baxley, Atty. Gen., and David W. Clark, Asst. Atty. Gen., for the State.

TYSON, Judge.

The indictment charges burglary in the second degree. Jury trial resulted in conviction and judgment set sentence at seven years imprisonment.

The evidence presented on behalf of the State shows that on January 17, 1968, during the daylight hours, the home of one Locke Houston Jones, Jr., in Jefferson County, Alabama, was broken into and entry made therein.

Jones testified that a safe was taken from his home containing, among other items, deeds and abstracts, insurance policies, money, a coin collection, a $10,000 savings certificate, and about 1400 shares

Parker, Wilkinson & Purvis, Birmingham, for appellant.

of stock. The remainder of Jones' testimony was to the effect that on January 19, 1968, two days after the burglary, he saw some of the items taken from his safe at Apartment 7-A, 106 Cotton Avenue, in Birmingham, Alabama.

The State next presented the testimony of Officer A. R. Bracewell of the Jefferson County Sheriff's Department. Bracewell testified that on January 15, 1968, he was on a special detail assigned to watch the appellant, Hudson; that on January 15, 1968, he, along with Officer James Earl Smith of the Sheriff's Department, followed the appellant, who was traveling in a 1963 Falcon station wagon, from Center Point, Alabama, to a bakery on 11th Avenue and 26th Street North in Birmingham; that the appellant then drove from Birmingham back to Center Point where he got out of the Falcon station wagon and into a black pickup Ford truck. At this point, Officers Bracewell and Smith followed appellant to an apartment building located at 106 Cotton Avenue Southwest where he was joined by another individual, one Elbert Lloyd Wade. Bracewell stated that he did not see the appellant enter the building. Appellant and Wade then proceeded to the Double L Barbeque where they were joined in that establishment's parking lot by another individual identified as Charles Gault.

The three men then got into Gault's truck and were followed to the entrance of Skyview Estates, a residential subdivision in Bessemer, Alabama, which was the area in which the burglary victim resided. Officer Bracewell stated that he and Officer Smith terminated their surveilance of the three men at the subdivision entrance in order to conceal from appellant that he was being followed. Officers Bracewell and Smith then returned to the Double L Barbeque where, after about an hour, they observed the appellant and Charles Gault when they arrived in Gault's truck. Elbert Lloyd was no longer in the truck.

Bracewell testified that the next time he saw the appellant was on the afternoon of the burglary, January 17, 1968. This was at Hill's parking lot, located across the street and approximately 200 feet from the apartment building at 106 Cotton Avenue where the appellant had been seen two days previously. At this time the appellant was in the custody of Sergeant Smith.

Officer Smith's testimony was in way of corroboration of Bracewell's testimony, and to some extent supplemental. Smith stated that on June 15, 1968, he and Bracewell followed the appellant to 106 Cotton Avenue; that the appellant got out of his truck and went into the apartment building; and that appellant came out of the building in a few minutes accompanied by one Elbert Wade. He and Bracewell followed appellant and Wade to the Double L Barbeque where they were joined by one Charles Gault. The three men left together in Gault's truck and were followed to the entrance of Skyview Estates where surveilance was discontinued.

Smith testified that he first became aware of the burglary about 4:00 p. m. on January 17th. He stated that he drove to Hill's parking lot, across the street from the apartment buildings on Cotton Avenue; that the appellant drove up and parked in front of the building at about 5:00 p. m.; that the appellant got out of his vehicle and began walking, at which time he was apprehended, placed under arrest and taken into custody. This particular arrest was not based on the burglary charge, but rather for not producing a driver's license and having an improper license tag on his vehicle.

A search of the appellant's person and his vehicle revealed nothing reported to have been stolen from the Jones' safe.

On June 18, 1968, Smith, accompanied by a Major Orange and Captain Williams of the Sheriff's Department, searched apartment 7-A at 106 Cotton Avenue, such apartment's mailbox bearing the name "McTyre." Found therein were three pistols, a bottle of medicine with the name "Wade" on it, some blank checks with the

"D. McTyre" on them, and a magazine with the name and telephone number of Charles Gault on it. Nothing was found which could serve to connect the appellant either with the burglary, the stolen property, or the above named persons.

The following day Officers Smith and Bracewell searched the attic immediately above apartment 7–A and found more of the items reported to have been stolen. Fingerprints were taken from which no successful identification could be made.

Captain Dan Jordan of the Jefferson County Sheriff's Department testified for the State that on January 25, 1968, he received a telephone call reporting an abandoned car somewhere off the Old Tuscaloosa Highway, some 15 or 20 miles from where the alleged burglary occurred.

In making his investigation, Captain Jordan found within the vicinity of the car the safe allegedly taken from the Jones'. Mr. Jones subsequently identified the safe as being the one taken from his home on January 17th. The combination dial on the safe had had been broken off and the safe had been broken into several pieces. Near the place where the combination dial was found, Captain Jordan found a pair of men's trousers. According to Jordan, "a day or two later" after finding the trousers, he discovered the name "Hudson" was written inside the trousers in two different places. Captain Jordan made an in-court identification of the trousers and same were introduced into evidence. Jordan stated that no fingerprinting or handwriting test was performed in relation to the trousers to establish their ownership. Jordan also stated that he made no attempt to establish the ownership of the car.

State's witness Emma Reeves Hodges, who was declared to be a hostile witness to the State and allowed to be asked leading questions, testified in substance that she had no recollection of the incident in question nor of the substance of her prior testimony offered in a previous trial of this cause.

## I.

On December 17, 1971, the trial court entered its adjudication of guilt. Motion for new trial was filed on January 17, 1972. Such motion for new trial filed more than thirty days after the formal adjudication of guilt, was too late. The trial court had lost jurisdiction to entertain this motion. Williams v. State, 41 Ala.App. 14, 123 So.2d 191; Lipkin v. State, 40 Ala. App. 423, 115 So.2d 283, and cases cited therein.

## II

On direct examination of State's witness Emma Reeves Hodges, the following transpired:

"Now, I ask you whether or not prior to your hearing about this burglary if Elbert Wade, if you overheard a conversation between Elbert Wade and this defendant, Bill Hudson, in your kitchen?

"A   I don't remember.

"Q   You don't remember?

"A   No, sir.

"MR. PICKENS: Your Honor, it appears to me that this witness is a hostile witness and I ask for permission of the Court to cross-examine her.

"MR. WILKINSON: May it please the Court, we object to that, there's been no evidence of hostility, no such thing calling for declaring her hostile witness.

"THE COURT: Do you claim surprise, Mr. Pickens?

"MR. PICKENS: Yes, sir.

"THE COURT: I will grant the motion.

"MR. WILKINSON: We except. What is the motion, Judge—I'm sorry. To be allowed to cross-examine her, is that what he's going to do?

"THE COURT: Treat her as a hostile witness. The phrase, the expression

'cross-examine' is inaccurate; treat her as a hostile witness.

"MR. WILKINSON: You overrule our objection?

"THE COURT: Correct.

"MR. PARKER: Mr. Pickens is looking at a paper, he's going to read something, we don't think that's proper.

"THE COURT: Overruled. Proceed, Mr. Pickens.

"MR. PARKER: We object."

Appellant now urges that the trial court committed error in declaring that the witness be treated as a hostile witness, thus opening the door for leading and suggestive questions.

This Court takes judicial notice that the witness Hodges had testified at a former trial of the cause in a manner most incriminating to the appellant concerning a conversation she overheard between the appellant and one Elbert Lloyd Wade. We can therefore logically assume that when the witness testified that she had no recollection of the substance of that conversation, the prosecutor was legitimately surprised. Based upon such claim of surprise, the trial court permitted the State to ask the witness a series of questions as to whether or not she had made certain prior statements and overheard certain statements during the course of that conversation. In question form, reference was made to prior testimony elicited from this witness in a former trial of this cause. The witness' most usual reply was that she did not remember making such statements.

◼ The rule is well settled in Alabama that while the State may not impeach its own witnesses, it may when taken by surprise, or for the purpose of refreshing the witness' memory, ask the witness whether or not he has made certain statements inconsistent with his present testimony. Jarrell v. State, 35 Ala.App. 256, 50 So.2d 767.

We find the applicable rule of law stated thusly in Hickman v. State, 12 Ala.App. 22, 67 So. 775:

"It is an ancient rule of the law that a party cannot directly impeach the character of his own witness for the purpose of discrediting testimony given by the witness and with which the party is dissatisfied. The reason for this rule, that seems to have stood the test of time and experience, is that when a party offers a witness in proof of his cause he thereby, in general, represents him to be worthy of belief, and will not be allowed to assume the inconsistent attitude of saying that he is unworthy of belief. This rule, however, is not violated, if the witness proves to be hostile to the proponent, or by previous statements made by the witness he has been deceived or misled, and is surprised and placed at a disadvantage by unexpected answers, by allowing leading questions calling to the attention of the witness previous contradictory statements, even though an affirmance of such previous statements may have a tendency to affect the credibility of the witness. White v. State, 87 Ala. 24, 26, 5 So. 829; Hemingway v. Garth, 51 Ala. 530; Thomas v. State, 117 Ala. 178, 23 So. 665; Schieffelin v. Schieffelin, 127 Ala. 14, 35, 28 So. 687; Southern Bell Telephone & Tel. Co. v. Mayo, 134 Ala. 641, 645, 33 So. 16."

The same rule applies where the witness testifies that he is without recollection of the matter inquired into. Jackson v. State, 226 Ala. 72, 145 So. 656; Pelham v. Chattahoochee Grocery Co., 156 Ala. 500, 47 So. 172; Billingslea v. State, 85 Ala. 323, 5 So. 137.

◼ Under the cases above cited, we are clear to the conclusion that the trial judge acted properly in allowing the prosecutor to refresh his witness' memory by the series of questions found on pages 124–139 of the record. This evidence was admissible not for the purpose of impeaching this witness, nor to be considered by

the jury as substantive evidence in this case, but only as showing hostility and surprise, and refreshing the witness' recollection.

## III

Appellant next urges that the trial court erred in denying his timely motion to exclude the State's evidence on the ground that the evidence presented by the State was insufficient to sustain a conviction for the offense charged.

■ The law dictates that in order to authorize the submission of a criminal case to a jury, there must be substantial evidence tending to prove all elements of the crime. Hardison v. State, 30 Ala.App. 40, 200 So. 635; Ex parte Grimmett, 228 Ala. 1, 152 So. 263; Bedsole v. State, 35 Ala. App. 567, 50 So.2d 457.

■ It is, of course, fundamental that a defendant's guilt may be established by circumstances as well as by direct evidence. Lowery v. State, 38 Ala.App. 505, 88 So.2d 854; Brannon v. State, 42 Ala.App. 564, 171 So.2d 845; Washington v. State, 44 Ala.App. 516, 519, 214 So.2d 867.

■ Notwithstanding this general proposition of the law, we are of the opinion, after a careful consideration of the entire evidence, that the State had not met its required burden of proof.

The strongest evidence presented against the appellant can best be summarized as follows: (1) Two days prior to the alleged burglary the appellant was seen in the company of one Elbert Lloyd Wade and one Charles Gault in the general vicinity where the burglary was allegedly committed. The evidence placed the appellant anywhere from one block to three quarters of a mile from the victim's house on that occasion; (2) Two days prior to the burglary the appellant was seen entering an apartment building composed of some ten to twenty units where a portion of the stolen property was ultimately recovered from apartment 7–A. Appellant was not seen entering any particular unit in this building, either prior to or subsequent to the alleged burglary. The mailbox outside apartment 7–A contained the name "D. McTyre." No evidence was offered by the State tending to connect McTyre to this incident; (3) Appellant's vehicle was observed in the area of the apartment building on January 15, 16, and 17, 1968; (4) Sheriff's officers found a medicine bottle in apartment 7–A with the name "Wade" on it; (5) The appellant was observed and arrested in a parking lot located in the vicinity of the apartment building on the afternoon the burglary was alleged to have been committed. None of the items reported to have been stolen were found on appellant's person or in his vehicle. Moreover, no possession of any of the stolen articles by the appellant was ever shown. Appellant was unarmed at the time and not shown to have resisted arrest; (6) More than a week after the commission of the alleged burglary, a pair of trousers with the name *Hudson* were found near an abandoned car approximately fifteen to twenty miles from the burglary site.

Undoubtedly, the evidence creates a suspicion against the appellant. However, as stated per Cates, J., in Wildman v. State, 42 Ala.App. 357, 165 So.2d 396:

"These, indeed, are suspicious circumstances. But, unlike the rule of possession of recently stolen goods, these facts are not such as, standing alone, would legally support a jury's verdict.

"Emphatically, the scintilla rule does not apply in criminal cases. To tip the scale of justice, the State has the onus of more than mere balancing of probabilities. It must satisfy the mind beyond a reasonable doubt. Deal v. State, 31 Ala.App. 183, 13 So.2d 688; Ex parte Grimmett, 228 Ala. 1, 152 So. 263; Blue v. State, 246 Ala. 73, 19 So.2d 11."

In Bluth v. State, 38 Ala.App. 692, 92 So.2d 685, the then Court of Appeals, per Harwood, P. J., stated:

"The possibility that a thing may occur is not alone evidence, even circumstantial, that the thing did occur. Taylor v. State, 30 Ala.App. 316, 5 So.2d 117; Blasengame v. State, 34 Ala.App. 85, 37 So.2d 225. Particularly is this true where, from the same proof, the injury can with equal probability be attributed to some other cause. Orr v. State, 32 Ala.App. 77, 21 So.2d 574; Rungan v. State, 25 Ala.App. 287, 145 So. 171. An accused charged with a felony should not be convicted on circumstantial evidence unless it shows by a full measure of proof that the defendant is guilty, and must exclude to a moral certainty every other reasonable hypothesis but that of the guilt of the accused, if the facts and circumstances can be reconciled with the theory that some agency other than the accused may have caused the death, then the accused is not shown to be guilty by that full measure of proof which the court requires. Lang v. State, 252 Ala. 640, 42 So.2d 512; Ellison v. State, 254 Ala. 428, 48 So.2d 176."

In reviewing the trial court's ruling on appellant's motion to exclude State's evidence, we also note the following pertinent language from Livingston v. State, 44 Ala.App. 559, 216 So.2d 731:

"On appeal where, as here, there was a motion to exclude all the State's evidence . . . we are not considering the degree of proof for the purpose of charging a jury on circumstantial evidence. Rather we must stake out the permissible area of reasonable deliberation by a jury."

This Court en banc has considered this entire record and finds the evidence adduced by the prosecution insufficient to support the verdict and judgment to the degree required by law, i. e., beyond a reasonable doubt.

With the foregoing in mind, and based on the above cited authorities, we hold the trial court in error to reversal in overruling the appellant's motion to exclude the State's evidence.

For this, the judgment is due to be and the same is hereby reversed and the cause is remanded.

Reversed and remanded.

CATES, P. J., and ALMON, J., concur.

HARRIS and DeCARLO, JJ., dissent.