(126 So. 890)

HAITHCOCK v. STATE.

8 Div. 932.

Court of Appeals of Alabama.

March 18, 1930.

Charlie C. McCall, Atty. Gen., for the State.

SAMFORD, J.

The indictment ended, "against the peace and dignity of the State of Alabama." It is not necessary that each count should so end. The demurrer to the indictment was properly overruled. McGuire v. State, 37 Ala. 161; Harrison v. State, 144 Ala. 20, 40 So. 568. On this particular point the opinion in Hill v. State, 22 Ala. App. 422, 116 So. 411, is misleading and should not be followed. In the Hill Case, the words, "against the peace and dignity of the state of Alabama," were a part of the second count of the indictment, and, as there written, did not appear as a part of or related to the first count. The published report does not show the true status.

The defendant introduced as a witness Mr. Wilson, who testified to defendant's whereabouts at the time he is alleged to have been at the still and to defendant's good character. Thereupon the solicitor for the state, on cross-examination, asked the witness the following question: "Q. Do you know about how long he has been making liquor Mr. Wilson?" The defendant objected to the question because it was incompetent, irrelevant, and immaterial and is the improper way to impeach witness and is not a question involving moral turpitude. The court overruled the objection, and the defendant excepted. Thereupon the witness answered the question as follows: "Ans. I don't know whether he ever made any liquor or not." The witness continued his testimony as follows: "I don't know that he did not. It was not over there the day he was building the furnace. I was not over there where the still was." Thereupon the solicitor for the state asked the witness the following question: "Q. You were not there when he was putting up the beer?" The defendant objected to the question because it was incompetent, irrelevant, and immaterial and assumes that this boy did it. The court overruled the objection, and the defendant excepted. Thereupon the witness answered the question as follows: "Ans. No sir." The witness continued his testimony as follows: "I don't know whether he was putting up the beer or not there. I didn't even know the beer was over there. I never had seen the barrels that had the beer in them. I don't know a thing in the world about it." Thereupon the solicitor for the state asked the witness the following question: "Q. You didn't know when he was digging around

Wm. Stell, of Russellville, for appellant.

there fixing to put in the furnace?" The defendant objected to the question because it was incompetent, irrelevant, and immaterial and assumes that this boy did it. The court overruled the objection, and the defendant excepted. The witness answered the question: "Ans. No sir." The witness continued his testimony as follows: "I don't know where I was that day. I don't know what day he done it. I never was over there and saw him make a trip over there to the still." Thereupon the solicitor for the state asked the witness the following question: "Q. Is it a fact that you and your wife saw him pass there going in that direction several times and you and your wife talked about it didn't you, and suggested that he was going over there for some purpose? Making too many trips over there, didn't you?" The defendant objected to the question because it was incompetent, irrelevant, and immaterial and invades the province of the jury and assumes a crime which is for the jury to determine. The court overruled the objection, and the defendant excepted. The witness answered as follows: "Ans. Of course he went that way some. His father-in-law he lived over there." This method of cross-examination was continued by the state with defendant's witnesses Mrs. Wilson and Dr. Flippo. None of these witnesses testified in their direct examination relative to any facts remotely touching the res gestæ.

■ While much latitude is allowed on cross-examination in order to test the knowledge and good faith of a witness, there are limits beyond which such examination may not extend. For instance: " 'A witness to character cannot speak of particular acts, or even the course of conduct of the person inquired about, but is confined to a statement of general reputation in the neighborhood in which he lives.' And so, too, it was held in that case [Moulton v. State, 88 Ala. 116, 6 So. 758, 6 L. R. A. 301] that the cross-examination of a character witness must be conducted within the limits of this inquiry." Way v. State, 155 Ala. 52, 46 So. 273, 278; Harmon v. State, 22 Ala. App. 288, 115 So. 67.

■ Another thing, evidence of character of accused can only refer to the time prior to the commission of the offense charged; so that the offense here charged should not enter into the estimate to be placed on defendant's character. McGuire v. State, 2 Ala. App. 218, 57 So. 57.

■■ Again, some of the foregoing questions, if not all, constitute error, in that they assume as proven facts in dispute of which there was no evidence, for instance, the question, "Do you know about how long he has been making liquor?" This question assumes that defendant had been in the habit of making liquor, when the fact had not been proven and the issue was, Did he make the liquor at the place and time charged? The above

applies to the other question similarly framed. These questions and answers were calculated to give the jury the impression as a fact proven that the defendant was in the business generally of making whisky and that he had engaged in certain acts of control over a certain still as would tend to show his possession. Green v. State, 96 Ala. 29, 11 So. 478; Andrews v. State, 159 Ala. 14, 48 So. 858; Moore v. State, 17 Ala. App. 625, 88 So. 25; Jones on Ev. par. 843; Harmon v. State, 22 Ala. App. 288, 115 So. 67.

On the trial the defendant offered showings for Julius West, Lonnie West, Riley West, and Vena Haithcock. After these showings were introduced in evidence, the court, in the presence and hearing of the jury, made the following statement and the rulings on motion incident thereto:

" 'Sheriff, ask your deputy to question these witnesses and ascertain if they will testify to what he says they will. And if they won't testify to what is contained in the showings bring the witnesses and the defendant before this court.' The defendant then and there in open court duly excepted to each of said remarks of the court in the presence of the jury about the showings and asked that same be excluded from them. Thereupon the court stated to the jury as follows: 'Gentlemen, that has got nothing to do with the trial of this case. It is the policy of this court wherever showings are made to instruct the sheriff to be on the lookout for the absent witnesses and ascertain whether or not those absent witnesses would testify to the facts which are sworn to by the defendant in the case that they would testify to. And of course if those facts are true and they would testify to that, alright. And if they would not of course whoever swears that they would testify to that is guilty of perjury and the court will take charge of them. It had nothing to do with the trial of this case though, and you will consider their statements in the showings as though the witnesses were up here swearing before you.'

"The defendant then and there moved the court that a mistrial be entered and the defendant discharged and that the case be continued because of the prejudice done in the remarks of the court in the presence of the jury. Thereupon the court stated as follows: 'Gentlemen, you understand, as the court instructed you, that that has nothing to do with these statements. You will take these statements as though the witnesses were here testifying, but this court has to keep track of these showings in order to find out if they are not true. Then the court will regard that those who made false statements as in contempt of court and will deal with them as in contempt of court. That is the purpose for which it is done. Not in this case alone, but in all cases where showings are offered.

" 'My attention has been called to the fact that I made the statement to you just now that the statements, if untrue, would amount to the offense of perjury. That is not the purpose of it at all. It is not perjury in contemplation of law. As I stated to you awhile ago, the only purpose of the court is to create and keep respect for court by dealing with those who do swear falsely by showings by putting them in contempt of court, but I emphasize again, gentlemen, what I stated to start with, that it hasn't anything to do with this case here. So far as you are concerned these showings go in before you as though the witnesses were here testifying to what is stated in the showings.' The defendant then and there in open court duly excepted to each of the foregoing remarks of the court."

The foregoing, together with other rulings of the court, were made the basis for a motion for new trial, which was overruled.

 A defendant charged with a criminal offense, however guilty or however the evidence may impress the trial judge, is entitled to a fair and an impartial trial before a jury. Constitution, § 6; Patterson v. State, 21 Ala. App. 22, 104 So. 866. This impartial trial he cannot have if the testimony which he offers is burdened with remarks and observations by the trial judge tending to minimize its weight before a jury. Showings for absent witnesses in criminal cases are of doubtful value at best, and, when the trial judge assumes an attitude towards such showing as to impress the jury that the facts stated therein may be fabricated, a serious injury has been done defendant which would be hard to overcome by subsequent explanations. The motion for new trial should have been granted. Owens v. State, 19 Ala. App. 621, 99 So. 774; McIntosh v. State, 140 Ala. 137, 37 So. 223; Pate v. State, 19 Ala. App. 243, 96 So. 649; Dennison v. State, 17 Ala. App. 674, 88 So. 211; Davis v. State, 18 Ala. App. 482, 93 So. 269; Powell v. State, 20 Ala. App. 606, 104 So. 551.

In Griffin v. State, 90 Ala. 596, 8 So. 670, and quoted with approval in Moulton v. State, 199 Ala. 411–416, 74 So. 454, 456, the court said: "Any statement by the court, however unintentional, made in the presence of the jury, calculated to control the jury in its consideration of the weight to be given to testimony, will work a reversal, unless it be clearly shown that such remarks have been explained and excluded from them. It may be thought that the criticism of the court is too restricted and technical; but the principle involved is of such paramount importance it would be dangerous to permit the least infringement of the rule to pass without correction. The separate province of the court and of the jury must be jealously guarded, carefully recognized and preserved. It is an 'anchor sure and steadfast' to protect those on trial for a violation of law, and to restrain the courts from the exercise of undue influence upon the juries, to whom is committed the important and exclusive right of weighing the evidence."

The rule can have no clearer statement nor be too often repeated, and this rule is quoted as being applicable to the case at bar.

 It was error for the court to refuse to permit the defendant on cross-examination to inquire of state's witness Clayton if he expected to participate in the fee of $50 provided by law in this case. Stanfield v. State, ante, p. 60, 120 So. 467; Gann v. State, 21 Ala. App. 347, 108 So. 269; Lock v. State, 21 Ala. App. 81, 105 So. 431.

For the errors pointed out, the judgment is reversed, and the cause is remanded.

Reversed and remanded.