190 So.2d 551

**Mathew PATRICK**

**v.**

**STATE.**

**6 Div. 23.**

Court of Appeals of Alabama.

Jan. 18, 1966.

Rehearing Denied May 17, 1966.

Rogers, Howard, Redden & Mills, Birmingham, for appellant.

Richmond M. Flowers, Atty. Gen., and Paul T. Gish, Jr., Asst. Atty. Gen. for the State.

JOHNSON, Judge.

Under an indictment charging murder in the first degree this appellant was found guilty of manslaughter in the first degree, his punishment being fixed at imprisonment in the penitentiary for a term of ten years. The plea was not guilty, which includes a plea of not guilty by reason of self-defense.

The State's evidence tends to show that appellant and the deceased, Walter Jones, were at the Steelworker's Club in Fairfield, Alabama, during the evening of October 29, 1963. Appellant went to the club at approximately 9:00 P.M. Jones was in the club when appellant arrived. Appellant sat at a table with one Jack Arterberry for a while, then, after making a telephone call,

he purchased "a beer" and sat at another table with one Jack Norris. After about five minutes, Jones came to the table and sat with appellant and Norris. Jones made remarks concerning the conduct of appellant's wife and an alleged rock-throwing incident involving appellant. The manager of the club came to the table and asked appellant to move. Appellant left the table and made another telephone call, then purchased another beer and sat at a table in another room with three other people. After a while appellant told the people at his table he was going home. He got up from the table and walked toward the door. There are some conflicts in the testimony concerning the events that followed.

Two witnesses for the State, Roxanne Baker and Ernestine Boykin, testified that they were sitting at the table with appellant and one Eddie Lassie, and that Jones was sitting at another table in the same room. Appellant, upon announcing that he was going home, started toward the door then stopped at a table near the table where Jones was sitting, and a verbal exchange between appellant and Jones followed. Jones picked up a chair and held it in front of himself with the legs pointed out. Then the witnesses saw appellant advance towards Jones. Jones fell to the floor and appellant leaned over him, and struck at him several times. Eddie Lassie pulled appellant away, stopping the fight.

Jona Brayboy, a witness for the State, testified that she saw appellant take a knife from his pocket and open it before the fight started, and that she, the witness, picked up a chair and ran between the appellant and Jones.

After Lassie pulled appellant away from Jones, Jones got up and walked to the entrance to the club and collapsed on the sidewalk outside. Blood was "streaming out of his chest," and he asked to be taken to a doctor. The appellant drove Jones to a hospital. Jones was admitted to the hospital at 11:37 P. M., and died at 12:10 A. M., less than an hour later.

One of the doctors who attended Jones, Dr. Earl Riley, testified that the cause of death was a stab wound in the chest, near the heart. In addition to the wound which caused death, the doctor observed a cut wound near the left armpit, one on the right knee, one on the right ankle, and one on the left hand. The wound which caused death was extended approximately one inch by the doctors in order to insert instruments into the wound in an attempt to save Jones' life.

Appellant gave a written statement to two police officers, in which he admitted that he cut Jones. He also gave the arresting officers a knife which he identified as the one used to cut Jones.

Appellant and Jones had difficulties on at least three occasions prior to the fatal difficulty, and on one of the prior occasions Jones "went home and got his gun after" appellant.

Concerning the fatal encounter, appellant testified that when he started to leave the club Jones came into the room and called appellant's name, that both he and Jones stopped, that he told Jones he "was through with it," and that after some words had passed between them, Jones said, "I ain't through with that." Appellant stated that Jones then put his right hand in his pocket and picked up a' chair with his left hand, and that he, appellant, got his knife out and "went into" Jones after Jones hit him with the chair. Appellant further stated that he struck at Jones but did not know if Jones was cut.

The court did not err in refusing to give the affirmative charge requested by appellant.

■ Six photographs depicting the deceased's body and wounds thereon were introduced in evidence by the State. These photographs were taken approximately two hours after the time of death. The first photograph, State Exhibit 1, depicts the wound on Jones' chest which according to medical testimony caused death. Objection

was made to the introduction of this photograph on the ground that it did not portray the wound in Jones' chest as of the pertinent moment of time, it having been established that the photograph depicts the wound after alteration by surgery. Before the jury retired the court withdrew this photograph from evidence and instructed the jury not to consider it.

In Metcalf v. State, 40 Ala.App. 25, 108 So.2d 435, Cates, J., wrote:

"Gruesomeness becomes objectionable in a photograph only when there is distortion of either of two kinds; *first,* distortion of the subject matter as where necroptic or other surgery causes exposure of nonprobative views, e. g., 'massive mutilation,' McKee v. State, 33 Ala.App. 171, 31 So.2d 656; or, *second,* focal or prismatic distortion where the position of the camera vis-a-vis the scene or object to be shown gives an incongruous result, e. g., a magnification of a wound to eight times its true size, Wesley v. State, 32 Ala.App. 383, 26 So.2d 413.

"These two concomitants to taint with harmful prejudice a photograph otherwise gruesome, when analyzed, resolve themselves into nothing more than the failure of the photograph to reproduce (alone or with auxiliary testimony) the subject matter as of the pertinent moment of time.

"Thus, in the second McKee appeal (the prejudicial photograph, Exhibit 'J' of the first trial was not tendered, 35 Ala.App. [174] 176, 44 So.2d [777] 778), the enquiry was not one of tampering or tinkering with the subject matter of the picture nor with the camera or film, but as to the effect on relevancy of natural decay of a body exhumed and photographed eight days after death.

"The late Mr. Justice Brown, in reversing this court, held that there was no error (merely a question of weight) in the admission of the photograph of the exhumed corpse merely because the picture was made a week or so after death if—and we attach all importance to this qualification—there was full and fair evidence to point out any easily distinguishable alterations such as embalming punctures and the like, 253 Ala. 235, 44 So.2d 781."

We have viewed the photograph (State Exhibit 1) and consider it had relevancy and probative value within the rule announced in Birmingham Baptist Hospital v. Blackwell, 221 Ala. 225, 128 So. 389, and applied in Grissett v. State, 241 Ala. 343, 2 So.2d 399. There was no massive mutilation and the mark from the surgical operation was clearly pointed out. McKee v. State, 253 Ala. 235, 44 So.2d 781; Gaddis v. State, 39 Ala.App. 630, 106 So.2d 268.

It is not necessary to determine whether there was error in originally allowing State's Exhibit 1 in evidence since we consider the action by the trial judge in withdrawing it from evidence was a sufficient exclusion.

■ The second of the six photographs, State Exhibit 2, portrays a wound near the deceased's left armpit. This photograph was received in evidence without objection. The third photograph, State Exhibit 3, depicts the same wound near the armpit depicted in State Exhibit 2, and also shows a wound on the left arm which does not appear in State Exhibit 2. Appellant objected to the introduction of State Exhibit 3 on the ground that it was "duplication, unnecessary repetition, doesn't [tend] to prove or disprove anything that indicates other than as evidence by the Exhibit introduced as Exhibit No. 2." The court did not in our opinion commit reversible error in overruling appellant's objection to State Exhibit 3. The photograph is not merely a duplication of State Exhibit 2 since it depicts a wound not shown in Exhibit 2, and although it was offered for the purpose of showing the same wound depicted in State Exhibit 2, this duplica-

tion was not so highly prejudicial as to warrant a reversal of this cause.

■ The fourth photograph, State Exhibit 4, depicts a wound on the left arm of the deceased. This wound is depicted in State Exhibit 2 also. It appears from the testimony of Deputy Coroner Andy Vines that the photograph (State Exhibit 4) was taken by Vines at the hospital approximately two hours after death. Vines testified that it accurately portrayed the body as he observed it at that time. This photograph was introduced in evidence over appellant's objection that a proper predicate was not laid, it not having been shown that the photograph portrayed the wound prior to any interference or that it portrayed the wound as of the time it was inflicted. We are of the opinion that a sufficient predicate was laid for the introduction of this photograph. Further, we conclude that this photograph did not prejudice appellant since it depicted a wound also portrayed in State Exhibit 3, which had already been received in evidence over an insufficient objection.

■ Appellant argues that certain questions and statements of the trial judge made during the examination of witnesses were highly prejudicial and constitute reversible error. Generally, a judge does not commit reversible error by questioning a witness or by suggesting that counsel ask specified questions. See Brown v. State, 33 Ala.App. 97, 31 So.2d 670; Wilcutt v. State, 41 Ala.App. 25, 123 So.2d 193, 203; Lovejoy v. State, 33 Ala.App. 414, 34 So. 2d 692, 700. But statements by the court which are calculated to control the jury in its consideration of the weight to be given to testimony require a reversal. See Haithcock v. State, 23 Ala.App. 460, 126 So. 890. We do not see the need for a detailed discussion of each question or statement by the judge to which an objection was made. A careful examination of the record leads us to the conclusion that in each instance the questions and statements of the judge were proper, and that the cumulative effect of the questions and statements did not create an atmosphere of prejudice or harm that resulted in a deprivation to appellant of a fair and impartial trial.

■■ The appellant called one George Cates as a witness. Cates had been previously examined under oath at the preliminary hearing and his testimony transcribed by a court reporter. During the course of direct examination of Cates, appellant's counsel claimed surprise and pointed out to the court conflicts in Cates' testimony on direct examination and his testimony taken at the preliminary hearing. Appellant then offered in evidence, pertinent portions of the transcript of the testimony from the preliminary hearing. The court did not err in refusing to allow the introduction of such transcript. Although a party who is surprised by unfavorable testimony of his witnesses may interrogate such witness as to previous inconsistent statements, yet he may not impeach his own witness by introducing proof of prior inconsistent statements to avert the effect of the unexpectedly unfavorable testimony given by such witness. Ruffin v. State, 30 Ala.App. 344, 6 So.2d 455, cert. den. 242 Ala. 345, 6 So.2d 456.

Appellant was asked during direct examination whether he had anything in his hand at the time the deceased allegedly picked up a chair and put his hand in his pocket. In response to a general objection by the State, the court stated, "Let him, in his own language tell what happened." Any injury created by the court's reply to the objection was cured when the appellant subsequently testified that he did not have a knife in his hand until after the deceased picked up the chair.

■ Appellant's written charges Nos. 2, 3, 4, 7, 9, 16, 24–A, 27 and 28 were properly refused since they were fully covered either in the court's oral charge or appellant's written charges given by the court. Some of these charges were confusing, misleading, or incomplete.

This cause is due to be and the same is hereby

Affirmed.