Appellant was charged in a two-count indictment with murder in the first degree and robbery, allegedly occurring in Franklin County. The indictment was returned *Page 767 
by a Franklin County grand jury, but on motion for a change of venue, the case was transferred to and tried in the Circuit Court of Madison County. The jury returned a general verdict finding defendant guilty as charged in the indictment and fixing his punishment at life imprisonment in the penitentiary. He was sentenced accordingly. His subsequent timely motion for a new trial was overruled by the trial court.
The evidence shows without dispute that on the night of December 29, 1974, one Willie Washington, a taxi driver, was savagely murdered and robbed in Russellville, while answering a call for his services. His throat was cut by a sharp instrument, his body was left in the cab and money that he had had on his person was taken from him. Two persons were seen in the back seat of the cab a short while before the crime was committed, who were afterwards seen running from the direction of the cab after it had stopped with the body of the victim in it. It was and is the contention of the State that the two persons seen in the cab were appellant and one Ronald Gholston, that they were the persons seen running from the cab and that they committed the crime.
The identity of the persons in the taxicab with the victim was the crucial issue in the case.
The State relied largely, if not exclusively, upon the testimony of fifteen-year-old Josephine Harrison to establish the identity of the persons in the cab, particularly appellant. Before she took the stand, the district attorney announced to the court, out of the presence of the jury, that the witness had testified before the grand jury and had given statements to the effect that defendant-appellant was one of the two in the cab and that he was one of the two running from the scene where the crime evidently occurred, but that she had manifested an unwillingness to so testify again and had indicated that if she testified, her testimony would be contrary to her previous testimony and statements identifying defendant as one of the two mentioned. The State asked the trial court to call the particular witness as a witness of the court or the judge. The court acceded to the request and out of the presence of the jury called her "as the Court's witness, and [she] was examined by the Court out of the presence and hearing of the jury." The interrogation by the court and responses by the witness ended as follows:
 "Q. Did you see somebody coming or running from a cab?
"A. Um hum."
A recess was then declared, and thereafter the witness testified at length in the presence of the jury, the State commencing the examination.
Josephine was weak in any identification of defendant. The State showed by her some statements that she had previously made, including her testimony on the preliminary hearing of Gholston. The State was able to prove by her that she had previously given testimony and made statements identifying defendant and Gholston as the persons in the back seat of the cab and as the two people running from the scene, but she denied making some of the statements, and in her testimony on the trial of appellant, she did not say that she saw defendant in the cab, and about the best for the State that she would say as to persons whom she saw leaving the scene was as follows:
 "Q. Did you recognize the two people that ran in front of that vehicle?
"A. Um hum. I think I did.
"Q. Who was that?
"A. Charles and Ronald.
 "Q. You say Charles, are talking about this man seated right over here (indicating)?
"A. Um hum. *Page 768 
 "Q. And he is one of the people you saw run by in front of the van?
"A. I think he did.
 "Q. Have you testified twice before that you were positive that it was who it was?
"A. I didn't say that I was positive."
After Josephine had testified, the State called three witnesses for the avowed purpose of impeaching the testimony of Josephine, which they did by testimony as to what she had said wherein she had positively identified appellant and Gholston as the persons in the cab and as the persons running from the scene. Although there was no objection on the part of defendant to every one of the questions to said witnesses, it is clear that defendant's counsel did object, and was allowed "a continuing objection in that line" by the court. At another time, when a witness of the State was asked as to what Josephine Harrison told him as to the two men in the cab, the court said that defendant "may have an exception, continually or continuing objection, rather."
 "If a person is called as a witness by the trial judge, any party may impeach the witness; however, such person does not become the witness of the judge unless and until the witness in response to the judge's questions has testified to some relevant fact. Peoples v. State, 257 Ala. 295, 58 So.2d 599." McElroy, Law of Evidence in Alabama, § 171.01 (9)
It is our view that the questions asked the witness by the trial judge, as quoted above, were sufficient to meet the test if they had been asked in the presence of the jury, that is, on the actual trial of the case. We are somewhat at a loss to determine the nature of the particular proceeding out of the presence of the jury. Although defendant objected to the State's announced effort to impeach the testimony of the particular witness by resorting to the request that the court make her the court's witness, it does not appear that the procedure used in attempting to make her the judge's witness, that is, by interrogating her out of the presence of the jury, was objectionable to defendant. There is some indication perhaps that defendant preferred such method to an interrogation of the witness by the judge in the presence of the jury. Whether any failure to meet the test of Peoples v.State, supra, was waived, or in fact invited, by defendant we need not decide at this time, as we hereinafter find that a reversal is necessary and the particular question now considered will probably not arise again on another trial.
The State was also allowed to impeach a witness called by theState. Here also, the impeaching testimony consisted of the testimony of more than one witness. The State's witness impeached was Calvin Hurley. The State sought to show by him that he had seen appellant and Ronald Gholston after the night of the crime, that they had told him he had better watch what he said when testifying before the grand jury. Upon questioning him on the point, the witness said that he had not seen the two after the night of the crime. The district attorney then announced his surprise at the answer of the witness. Again there was a conference out of the presence of the jury, at which some of his testimony before the grand jury was read. Upon the return of the jury to the jury box, the witness was asked by the State some questions as to what he had told the grand jury, which he either denied or stated he didn't know. A part of his testimony is as follows:
 "Q. And the question was, `When you come before the grand jury,' and your answer was, `Yes sir.' about watching what you said before the grand jury? and your answer was, `Yes, sir.' Do you remember making that statement?
"A. No.
 "Q. Were you asked before the grand jury, by the grand jury, `Did they make any threats, did they say what they *Page 769 
would do if you did tell,' and your answer was, `No, sir, they didn't say what they would do.' And the question was, `But they let it be known that they would cause you some trouble,' and your answer was, `Yes, sir.'?
"A. No.
 "Q. Do you recall being asked by the grand jury, `Are you scared of them boys, Calvin, are you scared about what they might do if they get off,' and your answer was,`Yes, sir.'
"A. No. I don't remember all that.
 "Q. Well, did you — Calvin, I will ask you if before the Franklin County Grand Jury that you — I will ask you if before the Franklin County Grand Jury you testified that from their conversations, from what they said and told you, that they indicated to you that they were both guilty of the death — in connection with the death of the cab driver on South Carroll?
"A. No. They didn't tell me that.
"Q. You did not tell the grand jury that?
"A. No.
Immediately after Calvin Hurley testified, the State let it be known that it was calling Mr. James Thompson, a member of the grand jury that returned the indictment. Counsel for defendant objected and included as a reason, "And further I would respectfully show that a party is not allowed to impeach his own witness and object to this man being called on that ground." The court overruled and Mr. Thompson testified. He was asked several questions by the State to which objections were made by defendant and sustained by the court. Included in the grounds were, "The proper predicate has not been laid," "It goes to the ultimate fact in issue which is for the jury to determine" and "It's not proper impeachment." After several attempts to introduce evidence by the witness of what Hurley stated before the grand jury, the following occurred:
 "Q. Let me ask you this, Mr. Thompson, before the Grand Jury was Calvin Hurley asked, `Did you talk to either one of them before they were arrested,' and his answer was, `Yes, I talked to them before they were arrested.'?
"MR. POTTS: We object to that on the same ground.
"THE COURT: Overruled.
"Q. You may answer.
"A. Yes.
. . . . . .
 "Q. And was he asked this question, `Didn't they tell you something about keeping quiet, about them being taken over there to the Hamm house,' and his answer was, `Yes, sir, they did.'?
"MR. POTTS: We object to that same grounds.
"THE COURT: Overruled.
"Q. You may answer.
"A. Yes.
. . . . . .
 "Q. And was he asked, `Did they make any threats, did they say what they would do if you did tell,' and his answer was, `No, sir, they didn't say what they would do?' Was he asked then, `But they let it be known that they would cause you some trouble' and his answer was, `Yes, sir.'?
 "MR. POTTS: We again object to all of these questions.
"THE COURT: Overruled.
"Q. You may answer.
"A. Yes.
"Q. That was his answer before the grand jury.
"A. Right." *Page 770 
After Mr. Thompson had testified and after a short recess, it was made known to defendant's attorney out of the presence of the jury that the State was calling another member of the Franklin county grand jury. A colloquy took place between the court and counsel for the respective parties which ended in a stipulation between the parties that the witness' testimony would be the same as that of Mr. Thompson, as shown by the following:
 "MR. POTTS: Your Honor, subject to our objections which you overruled, which we — with the understanding that your ruling would be the same we agreed to that stipulation in order to shorten the trial.
 "THE COURT: All right, you don't agree to its admissibility, but you agree to the stipulation?
"MR. POTTS: Yes, sir.
"THE COURT: Okay."
The testimony of the two grand jurors as to what Calvin Hurley had testified before the grand jury was inadmissible. The status of Calvin Hurley as a witness furnished no exception to the well established rule that a party cannot impeach his own witness by showing by another witness inconsistent statements by the witness sought to be impeached for the purpose of discrediting his testimony. Gandy v. State, 81 Ala. 68,1 So. 35; Alabama Power Company v. Hall, 212 Ala. 638,103 So. 867. This rule, to which there is uniform adherence by the appellate courts of Alabama, is not inconsistent with the principle that a party, who has been surprised by a witness, may interrogate him, lead him, in effect cross-examine him, in order (1) to refresh the recollection of the witness or (2) to show the surprise of the party who called the witness.Strickland v. State, 269 Ala. 573, 114 So.2d 407; McMillian v.State, 268 Ala. 63, 106 So.2d 244; Allen v. State, 51 Ala. App. 413, 286 So.2d 88; Hudson v. State, 48 Ala. App. 703,267 So.2d 494; Patrick v. State, 43 Ala. App. 338, 190 So.2d 551, cert. denied 280 Ala. 717, 190 So.2d 555; Marcum v. State,39 Ala. App. 616, 107 So.2d 899, cert. denied 268 Ala. 489,107 So.2d 902.
We are impressed by argument of appellant to the effect that, aside from evidence impeaching that of the witness Josephine Harrison, there is little evidence of defendant's guilt. Such testimony does not constitute substantive evidence on the issues between the parties, but operates only to discredit the witness. It cannot be made the basis of a finding of fact necessary to the establishment of guilt. In McElroy, Law ofEvidence in Alabama, § 159.02 (1) it is stated:
 "A self-contradictory statement by a witness who is not a party, whether testified to by him on cross-examination or proven by others is not substantive evidence of the matter asserted, that is, such statement operates only to discredit the witness, and has no other effect; in particular, such statement cannot be made the basis of a finding of a fact necessary to the establishment of liability or defense. Hamilton v. Browning, 257 Ala. 72, 57 So.2d 530; Ferlise [Ferlesie] v. Cook, 201 Ala. 571, 78 So. 915; Thomas Furnace Co. v. Carroll, 204 Ala. 263, 85 So. 455; Lynn v. State, 37 Ala. App. 400, 69 So.2d 485, syl. 4; Lawson v. State, 36 Alt. App. 438, 57 So.2d 643, syl. 4; Anno: 133 A.L.R. 1455."
Especially concerned by the principle that impeaching testimony cannot form a part of evidence sufficient to justify a conviction, we pass to another day a determination of whether the evidence in this case justified the court in overruling defendant's motion to exclude the testimony, the refusal of affirmative charges requested in writing by the defendant and the overruling of defendant's motion for a new trial. Notwithstanding the apparent stultification of the judicial process by witnesses, particularly the main witness for the *Page 771 
State, by swearing differently on the trial from what they had sworn before the grand jury, and had otherwise stated, and thus defeating justice by perjured testimony, a guilty verdict cannot be upheld if unsupported by substantial evidence bearing on the question of guilt. We do not find it necessary at this time to say that the evidence is not sufficient in this case, in view of our determination that the judgment below must be reversed and the case remanded for a new trial by reason of the admission in evidence of the testimony of witnesses showing that the witness for the State, Calvin Hurley, had made statements, prejudicial to defendant, inconsistent with his testimony on the trial.
The foregoing opinion was prepared by Supernumerary Circuit Judge Leigh M. Clark, serving as a judge of this Court under Section 2 of Act No. 288 of July 7, 1945, as amended; his opinion is hereby adopted as that of the Court. The judgment is reversed and the cause remanded.
REVERSED AND REMANDED.
All the Judges concur.