This is an appeal from a second conviction of defendant under a two-count indictment for murder in the first degree and robbery. On the previous appeal, the judgment of conviction and sentence was reversed by reason of the prejudicial error in allowing the State to impeach the testimony of one of its witnesses. Randolph v. State, Ala.Cr.App., 331 So.2d 766, cert. denied, Ala., 331 So.2d 771 (1976). There was evidence that appellant and Ronald Gholston killed and robbed Willie Washington, a taxi driver, in Russellville. Gholston was convicted and his conviction was affirmed in Gholston v. State,338 So.2d 454 (Ala.Cr.App. 1976). Most of the material evidence was narrated in the opinion in each of such cases. We see no necessity to narrate the evidence in the case now on appeal other than to focus attention upon some significant differences between it and the evidence in the previously reported cases.
Appellant raises a serious question as to the sufficiency of the evidence to support the conviction from which this appeal is taken. We recognized the seriousness of the question inRandolph, supra, but in view of the necessity for a reversal on another ground, we elected to "pass to another day a determination" thereof. In Gholston, supra, we held the evidence sufficient. In Gholston, however, there was considerable *Page 859 
difference between the evidence and the evidence on each of the two trials of Randolph. Furthermore, there is considerable difference between the testimony in the proceeding under review and the evidence on the trial when this appellant was previously convicted. We note some of such differences.
As in both of the cited cases, Josephine Harrison was the principal witness relied upon by the State on the trial involved in this appeal to prove the identity of the persons who killed and robbed Willie Washington. On each of the three trials Josephine was a chameleonic witness. On each trial, she was called as a witness by the court, but testified differently from previous statements in which she had positively identified Gholston and Randolph as persons so related to the time, the scene and the victim of the crime as to point persuasively to their guilt. On each of the other trials, the State was allowed to impeach her testimony, wherein she weakly identified the two, by her previous statements and testimony wherein she strongly declared their identity. In that respect, her evidence on the other trials is different from her testimony in the casesub judice, wherein the witness did not identify, even weakly, either Gholston or Randolph, as the persons who the evidence shows almost conclusively killed and robbed Washington. Her testimony on that subject was as follows:
 "Q Now, would you please tell the Ladies and Gentlemen of the jury who those two fellows are?
 "MR. POTTS: We — excuse me, I withdraw the objection.
"Q If you recognized them and who they were?
"A I didn't recognize them.
. . ."
Thereafter, the witness was interrogated intensively as to previous statements and testimony by her wherein she had identified the two. Notwithstanding the confrontation of her by her previous statements and testimony, she cleaved to her testimony that, "I didn't recognize them." On further examination of her by the State, her testimony was as follows:
 "Q Miss Harrison, would you please tell the Ladies and Gentlemen of the jury right now your present judgment as to who the two fellows were, do you have an opinion as to who the two men were that you saw run back up southward along St. Clair there and pass your van?
 "MR. POTTS: We object to that; she has already stated her testimony at this trial and we feel that this is repetitious.
"THE COURT: Overruled.
"A Like I told you, I wasn't sure who it was.
 "Q Do you have an opinion as to who it was? Do you think you recognized them?
"A No."
Thus it is to be seen that this important witness' testimony on the trial now reviewed was materially different from her testimony on the other two trials. We cannot say as we did inGholston, supra:
 "In her testimony, before any attempt to impeach her was made, she identified defendant as one of the persons. The fact that she did not positively identify him does not vitiate her testimony as to his identity. The hesitancy of a witness in identifying a defendant is a matter for consideration of the jury in passing upon the weight of such testimony. . . ."
Insofar as the State's case is dependent upon the testimony of Josephine Harrison, instead of having her testimony on the last trial as it was on the other two trials, we have it in the hypothesis stated in Gholston, supra:
 "If the witness had testified that neither of the persons she saw running from the cab toward the house of Sue Hamm was defendant, if her testimony were blank on the question whether defendant was one of such persons, the State's case would fail, even though the State was able to show by the witness that she had made previous statements, some in the form of testimony, wherein she positively identified defendant as one of the persons. . . ." *Page 860 
To uphold the verdict there must be substantive evidence of defendant's guilt. As to this the State relies upon two items of evidence not presented on either of the other two trials: (1) the testimony of one Arthur Burr, as to a statement by Randolph to the effect that he had killed a cab driver and thrown away the knife, and (2) some evidence that defendant had attempted to flee when he saw the police officers who were looking for him about a week after the murder.
To determine whether these two particular items of evidence are sufficient, when considered with the evidence as a whole, to support the conviction, due regard must be had for the general principle that the weight of testimony is for the trier of the facts, not for the court on appeal. On the other hand, attention must be given to whether the particular testimony constitutes substantial evidence of defendant's guilt. There is much to be said on both sides of that issue. We forego a determination of it by reason of the conclusion hereinafter reached which is dispositive of this appeal.
Among the fifty-six written charges requested by defendant and refused by the court were the following:
 "5-D. I charge you, ladies and gentlemen, that the evidence which has been received in this case for impeachment purposes, that is, evidence received to show that a witness's previous statements prior to this trial were inconsistent or different from the testimony given by that witness here, can only be used by you to judge the credibility of that witness or his or her testimony given at this witness or his or her testimony given at this trial, and cannot be used by you as substantive evidence of the facts stated on the prior occasion, or to prove or disprove the innocence or guilt of the defendant, Charles Randolph, of the offenses alleged in the indictment.
 "6-D. I charge you members of the jury that evidence that the State of Alabama offered at the trial of the case to impeach the testimony given by Josephine Nance [sic] and any other witness sought to be impeached by prior inconsistent statements, cannot in any manner be considered by you as tending to prove the guilt of the defendant, Charles Randolph, but can only be considered by you in deciding in what weight to give the testimony given in the courtroom by the witness so impeached.
 "7-D. I charge you, members of the jury, that statements or testimony received into evidence during a trial which were admitted to show that a witness had made previous statements inconsistent with that he or she made from the witness stand in this trial, or in other words, impeachments evidence, is not usable by the State as substantive evidence of the facts stated in the previous statements."
In its oral charge to the jury, the court said:
 "Now, there has been testimony in this case, Ladies and Gentlemen, and evidence offered in the nature of impeachment. That is, testimony offered to show that some witness or witnesses have made a different statement or a prior inconsistent statement than that testified by the witness from the stand. Statements previously made by the witness or a witness given before a Grand Jury or at a preliminary hearing or to other persons that differed from that they testified from the stand. And you are authorized, Ladies and Gentlemen, to take this testimony in considering what weight you will give to the testimony of that particular witness. It was admitted for your consideration for this limited purpose on the question of credibility."
Nothing further on the question of the effect of such impeaching testimony was stated by the court until after the case was submitted to the jury and the jury had deliberated thereon for about an hour and a half, at which time it was reported that the jury desired further instruction. The jury was called back into the courtroom and the following occurred:
 "THE COURT: Ladies and Gentlemen, you have a note here asking for certain — for the Court to go back over some of the *Page 861 
matters that were covered yesterday by the Court in the Oral Charge concerning burden of proof and reasonable doubt and the impeachment testimony and alibi and then you asked for some testimony to be read. . . ."
Thereupon, as shown by six pages of the transcript, the court charged the jury orally as to the matters about which inquiry had been made, which included the following as to testimony in the nature of impeachment testimony:
 "And you were told also, Ladies and Gentlemen, that some testimony was presented in the nature of impeachment and that you were authorized to take that testimony and you should consider it, that is the testimony offered to show that some witness or witnesses have made different statements or a prior inconsistent statement than that testified to by that witness on the stand here before you. And you were told that testimony of that nature was permitted for your consideration on the limited question of credibility."
After having some testimony read to the jury and an ascertainment by the court that there had been compliance with the request of the jury, the jury returned to the jury room to continue its deliberation. Just before doing so and in the presence of the jury, the following occurred:
 "MR. POTTS: Yes, Your Honor. We would like you to charge the jury additionally to the fact that impeachment testimony cannot be used as substantive evidence of guilt, which if the Court would —
"THE COURT: Well, of course, the jury was told that.
 "MR. POTTS: It was in one of our requested instructions.
 "THE COURT: Of course, the jury was instructed on the use of it, of that evidence and that it was offered for the limited purpose of impeachment."
The jury was returned to the jury box again within a few hours with a note stating, "May we have the same testimony of Josephine Harrison repeated again?" Thereupon the "requested testimony was read to the jury, and before the jury retired to go to lunch and thereafter resume its deliberations, counsel for defendant approached the bench and stated:
 "MR. POTTS: Judge, we would like to request you to instruct the jury that the only substantive testimony —
The court informed counsel that it would let counsel continue his statement after the jury was excused to go to lunch. When the jury was excused to go to lunch, the following occurred:
 "THE COURT: Now, Mr. Potts, I didn't give them any instructions and they didn't ask to be — for any instructions. I gave them exactly what they asked for. "MR. POTTS: My position —
 "THE COURT: And you can state your position if you like at this time.
 "MR. POTTS: My position is that obviously they are focusing on the testimony of Josephine Harrison. The only substantive testimony of Josephine Harrison was, `I didn't recognize them.' The other testimony is in the nature of impeachment. And we feel that since this is the case, that the jury should be instructed according — along the same lines as we requested in our instructions which were refused, to the effect that — that impeachment evidence cannot be used in any manner except to determine whether or not the statement, `I didn't recognize them,' is to be given credence or not. And we feel like that's not clear from the Court's instructions, that even though there was some mention of the impeachment being used only for the limited question of credibility, we feel like it doesn't make it clear enough to the jury about the rule against impeachment evidence as being substantive evidence and respectfully request the Court to instruct the jury further in that regard.
 "THE COURT: Mr. Potts, I know some lawyers that don't know what the word substantive means, and I am of the opinion that the jury having been twice charged concerning credibility of the witness is meaningful and they being in *Page 862 
their deliberations, I am seeking to provide for them that which they request. And I am not going any further with it.
"MR. POTTS: We respectfully except."
Notwithstanding the strongly expressed minority view to the contrary, and our profound respect for its proponents, the principle is settled at the present time in Alabama, by uniform decisions, that the self-contradictory statement of a witness who is not a party, whether testified to by him on cross-examination or proved by others, is not substantive evidence of the facts asserted; and that the statement operates only to discredit the witness and cannot be made the basis of a finding of a fact necessary to the establishment of liability or defense. The rule is stated in McElroy, Law of Evidence inAlabama, (2d ed.) § 159.02 (1),[1] which was quoted in Gholston,supra. In support thereof, Judge McElroy cites, Hamilton v.Browning, 257 Ala. 72, 57 So.2d 530; Ferlesie v. Cook, 201 Ala. 571,78 So. 915; Thomas Furnace Co. v. Carroll, 204 Ala. 263,85 So. 455; Lynn v. State, 37 Ala. App. 400, 69 So.2d 485, Syl. 4; Lawson v. State, 36 Ala. App. 438, 57 So.2d 643, Syl. 4; Anno: 133 A.L.R. 1455, to which we add the cases of Cloud v.Moon, 290 Ala. 33, 273 So.2d 196 (1973) and Isbell v. State,57 Ala. App. 444, 329 So.2d 133 (1976).
The State does not take issue with the proposition that the majority rule is the law in Alabama. It was obviously so understood by the parties and the judge on the trial under review and applied by this Court in Randolph, supra, andGholston, supra.
Appellant urges that the trial court should have given defendant's requested charges 5-D, 6-D and 7-D. Appellee replies by quoting from the court's oral charge precisely what we have quoted above as constituting all the court said on the subject of impeachment testimony,[2] and relies upon the principle that requested written charges are properly refused when they are fully covered in the oral charge. The principle is sound, but we cannot subscribe to the view that the instructions called for in the written charges were fully covered by the oral charge.
According to the majority view, including the view in Alabama, the principle as correctly and adequately stated, is both inclusive and exclusive. It states what impeachment evidence is and what impeachment evidence is not. The principle may be, and often is, stated variously, but almost without exception it is so stated as to comprehend the purpose or effect of the evidence and what is not its purpose or effect.
In McElroy, supra, it is stated:
 "And the trial court should give a requested written charge instructing the jury that the self-contradictory statement is proper to be considered only for impeachment and not as evidence of the truth of the matter stated. [Emphasis supplied] Thomas Furnace Co v Carrol, 204 Ala. 263, 85 So. 455, Syl. 10 (charge J); Engel v Davis, 256 Ala. 661, 57 So.2d 76, Syl. 8 (charges 22-A, 23 and 24)."
In the cited case of Thomas Furnace Co. v. Carroll, the judgment was reversed for the failure to give the following written charge:
 "J. The court has permitted the witnesses Quinn and Williams to testify to an *Page 863 
alleged statement claimed to have been made to the witness Hill as to the giving of the signal upon which the car was pulled out of the mine. This testimony cannot be considered as evidence of the truth of such statements, but such evidence was admitted solely for the purpose of impeaching the testimony of the said Will Hill."
In Engel v. Davis, supra, in upholding the admission of testimony impeaching the testimony of a certain witness by proof his out-of-court statement inconsistent with his testimony, it was stated at 256 Ala. 665, 57 So.2d 79:
 ". . . A proper predicate had been laid for the impeaching evidence. The court expressly limited the evidence to the capacity of impeaching testimony. Furthermore the court instructed the jury in writing in Charges 22-A, 23 and 24 expressly and positively that the testimony was admitted for the purpose of contradicting or impeaching the witness Byers and `is not evidence against the defendant William Engel.' There was no error in this ruling. . . ."
Somewhat, but not altogether, like the difference between defendant's counsel and the trial court in this case was the difference between defendant's counsel and the trial court inSlade v. United States, 267 F.2d 834 (5th Cir. 1959). There, the trial court rejected a request of defendant to charge the jury that the impeachment testimony could not be used as "proof of the facts therein stated." In reversing the case for the trial court's failure to distinguish adequately between evidence affecting credibility and evidence "to establish the stated fact," the court on appeal at 839-840 said:
 "This distinction should be delineated sharply in terms readily understandable by the jury. It is not done by simply stating that it is to be used `as a matter of impeachment going to his credibility' or the further suggestion that it is to be used to determine whether Hardy `was telling the truth when he was first called on the stand or not.' Note 6, supra. Assuming the jury understood what was `impeachment going to his credibility' the instruction did not advise the jury what they were to do if, as the charge permitted, they determined that the ex parte statement showed Hardy was untruthful on the witness stand. Nothing forbade its further use to establish the critical facts at issue and therein stated categorically. `[W]hile the court stated that they were offered for impeachment [purposes] only, this was all that was said, and the jury was allowed to take the whole matter without explanation or instructions as to what was meant by "for impeachment purposes only."' Young v. United States, supra, 97 F.2d 200, at page 207."
 "As to this distinction `we think the trial judge should have drawn it carefully and explicitly in his charge to the jury by an explanation more detailed than the brief charge given' here. Dowell, Inc. v. Jowers, 5 Cir., 1948, 166 F.2d 214, 219, supra. And in these circumstances that is done only if the court clearly `instructs the jury that the impeaching evidence is not admitted as evidence in the offeror's favor but merely to destroy the credit of the witness, to remove the damage caused by the surprise * * *' and suitably cautions `* * * the jury that the contradictory statements could have no legal tendency to establish the truth of their subject matter.' Culwell v. United States, 5 Cir., 1952, 194 F.2d 808, 811. Young v. United States, 5 Cir., 1938, 97 F.2d 200, 205, 207, 117 A.L.R. 316, 323, 325."
Under the established law of Alabama at the time of the trial of this case, testimony of a witness' self-contradictory statement admitted for impeachment purpose only was not substantive evidence of the truth of the matter asserted in the witness' self-contradictory statement, and the jury should have been so instructed. No such instruction was given by the trial court ex mero motu, and there was error in its refusal to give at least one of defendant's requested Charges 5-D, 6-D and 7-D. *Page 864 
The case was tried on the theory both of the State and the defendant that impeaching testimony can be considered for impeachment purposes only. The testimony was admitted for such purposes only — not as substantive evidence, — not only on the second trial of defendant, but also on his first trial(Randolph v. State, supra) and on the trial of Gholston v.State, supra. Such was the law of the case upon which defendant and his attorney had the right to rely, not only on the first trial but also on the second trial. Notwithstanding what is hereinafter stated, the judgment must be reversed for the error indicated.
We have been tremendously impressed by the accentuation by the facts in this case of the issue as to the logical validityvel non of the rule of unsubstantiveness of impeaching testimony as recognized by Alabama and a majority of the courts of the United States, as compared with the minority rule to the contrary.
Eminent critics of the traditional rule have vigorously pressed for its repudiation or relaxation. Champions of the cause of the minority include Professors Wigmore, McCormick and Morgan and Judges Learned Hand, Swan and Friendly. 3A Wigmore (Chadbourn Rev.) Evidence, § 1018 (b)(1970); McCormick, "The Turncoat Witness: Previous Statements As Substantive Evidence" 25 Tex.L.Rev. 573 (1947); Morgan, Hearsay Dangers and theApplication of the Hearsay Concept, 62 Har.L.Rev. 177, 193 (1948); Judge Learned Hand in Di Carlo v. United States,6 F.2d 364, 367-368 (2 Cir. 1925), cert. denied 268 U.S. 706,45 S.Ct. 640, 69 L.Ed. 1168 (1925); Judge Swan in Ng Kee Wong v. Corsi,65 F.2d 564 (2d Cir. 1933); Judge Friendly in United States v.De Sisto, 329 F.2d 929 (2d Cir. 1964), cert. denied377 U.S. 979, 84 S.Ct. 1885, 12 L.Ed.2d 747 (1964).
The invectives inveighed against the traditional rule have not weighed heavily with us, but the cold reasoning of its learned critics has convinced us that the issue should be re-examined, and the facts of the instant case convince us that now is the time. Now a situation is presented wherein a principle, as to which there is serious question, has enabled a defendant to have a judgment of conviction reversed a second time largely because a witness has changed her testimony from what it was on the preliminary hearing from what it was on the first trial of this case and from what it was on the trial of appellant's co-defendant. Without the testimony of that witness in Gholston v. State, supra, Gholston's conviction could not have stood. Judicial procedure has been stymied, and the soundness of the judicial process has been made subject to serious question, by the action of the witness in changing her testimony from that which convicted Gholston to that which tends to free Randolph. The fiasco is compounded when we consider the established principle that if the witness were dead, or not available to testify, her previous testimony in the same case could be used by the State against appellant as substantive evidence.
That there is no violation of the Confrontation Clause of the Sixth Amendment to the Constitution of the United States by the admission, as substantive evidence, of the prior testimony in the same case of a subsequently unavailable witness, which has long been the practice in Alabama, was definitely resolved by the Supreme Court in 1895 in Mattox v. United States,156 U.S. 237, 242-243, 15 S.Ct. 337, 39 L.Ed. 409, 411. In reaffirmingMattox in California v. Green, 399 U.S. 149, 90 S.Ct. 1930,26 L.Ed.2d 489 (1970), the Supreme Court could see no reason for a different conclusion as to the Confrontation Clause in a case where the evidence under consideration consists of prior inconsistent testimony of the same witness, in the same case, offered on cross-examination of him on the trial of the proceeding under review.
It was held in Green, supra, that the admission in evidence of the previous testimony of a witness or evidence of the truth of the matter stated in such testimony, including particularly testimony on a preliminary hearing of the defendant, where defendant had the opportunity at the time the previous testimony was given of cross-examining *Page 865 
the witness by counsel, does not collide with the Confrontation Clause. However, the Supreme Court reserved for future determination, as "not ripe for decision," the issue whether a witness' apparent lapse of memory affected an accused's right to cross-examine him to such an extent that the Sixth Amendment right to Confrontation, applicable to state judicial procedure by the Fourteenth Amendment, is violated by the admission of out-of-court statements of the witness.
As to trials in Federal Courts, the divergent views relative to the matter now before us have been largely composed by the adoption of the Federal Rules of Evidence, as approved by Pub.L. 93-595, § 1, January 2, 1975, 88 Stat. 1938, "effective one hundred and eighty days thereafter." The enactment represents the fruition of thirteen years of intellectual labor of distinguished professors, judges, lawyers, and Congressmen, beginning with the appointment by the Chief Justice of the United States of a committee to study the feasibility of developing uniform rules of evidence, which was followed, after a favorable report by the committee, by the appointment of an Advisory Committee on Rules of Evidence for the purpose of drafting rules of evidence, to be submitted to the Supreme Court. After this committee completed its work, the Supreme Court promulgated a Code of Evidence in February 1973, subject to disapproval by Congress, which removed the deadline for disapproval and made express approval of the Congress a requisite to the effectuation of the rules.
After many amendments in the House, a bill was passed and sent to the Senate, where it was passed with substantial amendments, which required submission to and report by the Conference Committee. Along with the many controversial positions taken with reference to the content of the proposed rules, there were vigorous protests by eminent legal scholars and prestigious organizations of trial attorneys to a codification of rules of evidence. Many compromises of views are to be found in the final product, including a "give and take" result as to adherence to the traditional rule and advocates for the minority rule as found in the following pertinent part of Fed. Rules Evid., Rule 801:
 "The following definitions apply under this article:
 "(a) Statement. A `statement' is (1) an oral or written assertion or (2) non-verbal conduct of a person, if it is intended by him as an assertion.
 "(b) Declarant. A `declarant' is a person who makes a statement.
 "(c) Hearsay. `Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted.
 "(d) Statements which are not hearsay. A statement is not hearsay if —
 "(1) Prior statement by witness. The declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is (A) inconsistent with his testimony, and was given under oath subject to the penalty of perjury at a trial, hearing, or other proceeding, or in a deposition, or (B). . . ."
The bill to enact rules of evidence as first passed by the House, Rule 801 (d)(1)(A), included a requirement that the prior inconsistent statement by the witness must have been "given under oath subject to cross-examination and subject to the penalty of perjury at a trial or hearing or in a deposition." (Emphasis supplied). The Senate dropped such requirement. Emerging from that disagreement between the two bodies, was the Conference Report as embodied in the rules as finally enacted by Congress as shown above, whereby the scope of self-contradictory statements of a witness as evidence to prove the truth of the matter asserted in the statement is as that which the witness stated previously "under oath subject to the penalty of perjury at a trial, hearing, or other proceeding, or in a deposition," which, being without the requirement of prior opportunities of cross-examination, includes testimony before a grand jury. *Page 866 
It seems that the Federal Rules on the particular point under consideration are now largely in accord with the view of judge Friendly, as expressed in United States v. Cunningham,446 F.2d 194, 197-198 (2d Cir. 1971), wherein the Second Circuit Rule, as opposed to the traditional rule, is limited to previous testimony (sworn statements) of a witness, contextually declared as follows:
 ". . . . While, beginning with United States v. De Sisto, 329 F.2d 929, 933 (2 Cir.), cert. denied, 377 U.S. 979, 84 S.Ct. 1885, 12 L.Ed.2d 747 (1964), we have allowed certain prior inconsistent statements of a witness available for cross-examination to be received as affirmative proof, we have rigorously limited this to sworn testimony at a former trial or before a grand jury. United States v. Mingoia, 424 F.2d 710, 713 (2 Cir. 1970); United States v. Insana, 423 F.2d 1165, 1170 (2 Cir.), cert. denied, 400 U.S. 841, 91 S.Ct. 83, 27 L.Ed.2d 76 (1970). The risk of going further is illustrated by this case where, in addition to the dangers against which the hearsay rule is meant to protect, the issue whether the declarant ever made the statement requires resolution of a swearing contest between himself and the police."
The court held in Cunningham that the admission of self-contradictory unsworn statements of a witness would fall within the ban of Bridges v. Wixon, 326 U.S. 135, 150-154,65 S.Ct. 1443, 89 L.Ed. 2103 (1945).
None of the Alabama reported decisions relative to the use or non-use of a witness' prior inconsistent statements as substantive evidence dealt with a prior inconsistent statement made under oath while testifying as a witness on a former trial on which the defendant was afforded an opportunity to cross-examine the witness. This leaves us, we feel, without restraint to make the following observations, in fairness to both parties in this case, as to what we would hold in a case squarely presented to us on the point whether the testimony of Josephine Harrison as given by her on the first trial of the appellant herein and on his preliminary hearing, if adequate opportunity was afforded him through counsel to cross-examine her, is substantive evidence of her recognition of him and Gholston as the persons in the taxicab and at the scene of the crime at the time it occurred, if inconsistent with her testimony on the trial of the case under review. In doing so we find no alternative to the conclusion that there would be an impasse in the course of reason to say that such testimony would be substantive evidence in the absence of such witness as unavailable, but that it would not be substantive evidence when she is on hand and subject to cross-examination by the party against whom such testimony is given. It may be that we would go further in qualifying the traditional rule, but as we see it now, we should limit our statement to what we are convinced is not in conflict with what the Supreme Court of Alabama has held or with what the Supreme Court of the United States has held, or would hold, as impinging upon any Constitutional rights of defendant.
Our decision removes some of the reasons for opposition to the principle that prior inconsistent statements of witnesses constitutes substantive evidence. It does not impair any constitutional or other substantial rights of the party against whom such evidence is admitted. Solid and cogent reasons for using as substantive evidence a prior statement of a witness (inconsistent with his present testimony) made while testifying under oath on a former trial, with the opportunity for cross-examination are:
(a) the prior statement was made nearer in time to the occurrence, event or other matter to which it relates, and therefore when the witness' recollection would be fresher and better, and
(b) the prior statement is less likely to have been influenced by pressure arising from the controversy, including the cajolery or corruption of, or other tampering with, the witness.
If the question is pressed as to why such an indicated holding is not dispositive favorably to the State of the main issue on this appeal, the answer is that the case was *Page 867 
tried on a different theory, without a note of dissent, agreed upon impliedly at least among both parties and the trial court. That agreed upon theory necessarily served as a guide to both parties in their handling of the case throughout, and to hold now that the law by which he was tried is not the law by which his case should be reviewed would be a gross injustice to any defendant, be he ever so guilty. In addition, it is to be noted that there were self-contradictory unsworn statements of the witness that were also admitted in evidence, which we are not prepared now to say constitute affirmative evidence, but if we were, justice requires, we think, that such a change in the settled procedural law of this state should not be made so as to affect one's rights on a trial that precedes the change. In all of this, we especially invite applications for rehearing and review of whatever ruling we make thereon by petition to the Supreme Court of Alabama for a writ of certiorari.
Other questions are raised by appellant which we do not find necessary to pass upon at this time. Some of them arose in the "rough and tumble" of heated clashes in the court room, aggravated by encounters between the District Attorney and the witness Josephine Harrison during out-of-court discussions of the case between him and her. We trust that on another trial all concerned will generate more light than heat on the issues between the parties, to the end that a true verdict according to the law and the evidence may be rendered. As a matter of record, it should be stated that the position was taken by defendant that the witness Josephine Harrison had been influenced by fear to make her previous statements and give her previous testimony wherein she positively said in effect that appellant was one of the men who killed and robbed deceased. On the other hand, there was strong evidence to support the contention of the prosecution that her previous statements, sworn and unsworn, constitute the truth and substantial variance therefrom is false. As to such issue, an impartial jury is in a better position than anyone else to arrive at a correct result.
The judgment of the trial court should be reversed and the cause remanded for a third trial.
The foregoing opinion was prepared by Supernumerary Circuit Judge Leigh M. Clark serving as a judge of this Court under Section 2 of Act No. 288 of July 7, 1945. The judgment of the court below is hereby reversed and remanded.
REVERSED AND REMANDED.
All the Judges concur.
[1] It should be noted that Judge McElroy expresses no opinion of his own as to the merits of the rule, but merely, with his wonted exactitude, states the well established rule in Alabama, and a consequential principle, and supports his statement with cited authorities.
[2] In addition, appellee quotes from the oral charge as follows:
 "You would also consider whether or not the witness, as I say, has been impeached in giving the testimony and if so, what weight you would give to the testimony of that witness. And, of course, Ladies and Gentlemen, if you find that some witness has been impeached in giving his testimony, then, you would be authorized to disregard the testimony of that witness in its entirety. You would not be bound to do so, and you may not capriciously do so, but you would be authorized to do so in your judgment if you chose to do so or to determine what weight you would give to that witness's testimony you have found to have been impeached."
This part of the charge refers to the testimony that has been impeached, or sought to be impeached, not to the impeaching testimony, which is the matter here involved.